UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------X

**BERNARD BARNETT,**              :          **90 CR 913 (LAP)**
                                             **16 CV 3611 (LAP)**

                  *Petitioner,*   :

      - against -                 :

UNITED STATES OF AMERICA,         :

                  *Respondent.*   :

-----------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF
MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR
<u>CORRECT SENTENCE BY A PERSON IN CUSTODY</u>**



                        Darrell Fields
                        FEDERAL DEFENDERS OF NEW YORK, INC.
                        52 Duane Street, 10th Floor
                        New York, New York 10007
                        Tel.: (212) 417-8742
                        Email: Darrell_Fields@fd.org

                        *Counsel for Petitioner*
                          ***Bernard Barnett***

**DARRELL FIELDS,**
  Of Counsel

TO: **JOON H. KIM, ESQ.**
      Acting United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, New York 10007
      Attn.: **JACOB E. WARREN, ESQ.**
              Assistant United States Attorney

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . iii

STATEMENT OF JURISDICTION.. . . . . . . . . . . . . . . . . 2

QUESTION PRESENTED. . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . 4

    1.   Procedural history. . . . . . . . . . . . . . . . 4

    2.   The Supreme Court's decision in <u>Johnson v.
       United States</u>.. . . . . . . . . . . . . . . . . 7

    3.   The Second Circuit authorizes this § 2255 motion. . . 9

ARGUMENT

Because Mr. Barnett Satisfies the Requirements
for a Successive Motion and Because His Life
Sentence, Imposed under the Mandatory Guidelines
in 1992, Is Unlawful under <u>Johnson</u>, the Court
Should Vacate that Sentence and Resentence Him... . . . . . . 11

<u>Point I</u>

<u>Johnson</u> Applies to Sentences Imposed under
Mandatory pre-<u>Booker</u> Career Offender Guidelines.. . . . . . . 11

    A.   Because the mandatory Guidelines fixed the
       permissible range of sentences, (1) the
       pre-<u>Booker</u> residual clause is subject to
       <u>Johnson</u>'s vagueness analysis, and (2)
       <u>Johnson</u>'s rule applies retroactively in
       pre-<u>Booker</u> cases... . . . . . . . . . . . . . . 15

        1.   <u>The pre-Booker Guidelines were "mandatory
           and binding" on courts and "fix[ed] the
           permissible range of sentences."</u>.. . . . . . . 16

        2.   <u>The *Johnson ru*le applies retroactively
           to *pre-Booker* sentences</u>. . . . . . . . . . . 20

Point II

Mr. Barnett's Sentence of Life Imprisonment Is
Unlawful Because He Cannot Be Punished as a
Career Offender after <u>Johnson</u>.. . . . . . . . . . . . . . . .  21

 A. The Career Offender Guideline.. . . . . . . . . .  22

 B. The categorical approach. . . . . . . . . . . . .  24

 C. The "physical force" clause requires the
   intentional use of <u>violent</u> physical force.. . . . . .  28

 D. New York first-degree robbery is not a crime
   of violence under the force clause... . . . . . . .  31

 E. The Commentary to the Guideline (listing
   "robbery" and other offenses) has no effect
   after <u>Johnson</u> struck the residual clause... . . . .  38

Point III

This Motion Necessarily "Relies on" (and
"Contains") the Rule of 2015 <u>Johnson</u>, a New
Constitutional Rule Made Retroactive by the
Supreme Court, and thus Satisfies AEDPA's
Gatekeeping Requirement. . . . . . . . . . . . . . . . . . . .  40

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . .  46

## TABLE OF AUTHORITIES

Alleyne v. United States, 133 S. Ct. 2151 (2013). . . . . . .  17

Bailey v. United States, 516 U.S. 137 (1995). . . . . . . . . . 7

Barnett v. United States, 2d Cir. Docket No. 16-3147,
        ECF No. 20 (Order of Oct. 26, 2016). . . . . . . . . . 3, 44

Barnett v. United States, 870 F.Supp. 1197
        (S.D.N.Y. 1994). . . . . . . . . . . . . . . . . . . . 5, 16

Beckles v. United States, 136 S. Ct. 2510
        (U.S. cert. granted June 27, 2016). . . . . . . . . . . . 3

Beckles v. United States, 137 S. Ct. 886 (2017). . . . . . .  passim

Brown v. Caraway, 719 F.3d 583 (7th Cir. 2013). . . . . . . . 18

Burns v. United States, 501 U.S. 129 (1991). . . . . . . . 14, 19

Descamps v. United States, 133 S. Ct. 2276
        (2013). . . . . . . . . . . . . . . . . . . 24, 25, 26, 27

Esquivel-Quintana v. Sessions, 137 S.ct. 1562 (2017). 25, 26, 27

FCC v. Fox Television Stations, Inc., 567 U.S. 239 (2012). . . 19

Garcia v. Gonzalez, 455 F.3d 465 (4th Cir. 2006). . . . . . . 30

Hawkins v. United States, 706 F.3d 820 (7th Cir. 2013). . . . 18

In re Hubbard, 825 F.3d 225 (4th Cir. 2016). . . . . . . . 18, 20

In re Patrick, 833 F.3d 584 (6th Cir. 2016). . . . . . . . . 19

Irizarry v. United States, 553 U.S. 708 (2008). . . . . . . . 14

James v. United States, 550 U.S. 192 (2007). . . . . . . . . . 9

Jobson v. Ashcroft, 326 F.3d 367 (2d Cir. 2003). . . . . . . . 30

Johnson v. United States, 135 S. Ct. 2551 (2015). . . . . . passim

Johnson v. United States, 559 U.S. 133 (2010). . . . . . . passim

Jones v. United States, 689 F.3d 621 (6th Cir. 2012). . . . . 31

Koon v. United States, 518 U.S. 81 (1996). . . . . . . . . . 17

Kropp Forge Co. v. Sec'y of Labor, 657 F.2d 119 (7th Cir.
     1981). . . . . . . . . . . . . . . . . . . . . . . . . 19

Leocal v. Ashcroft, 543 U.S. 1 (2004). . . . . . . . . . 30, 31

Mathis v. United States, 136 S. Ct. 2243 (2016). . . . . 26, 27

Mellouli v. Lynch, 135 S. Ct. 1980 (2015). . . . . . . . . . 25

Mistretta v. United States, 488 U.S. 361 (1989). . . . . 15, 16

Moncrieffe v. Holder, 133 S. Ct. 1678 (2013). . . . . . . 26, 28

Narvaez v. United States, 674 F.3d 621 (7th Cir. 2011). . . . 18

People v. Bennett, 631 N.Y.S.2d 834 (App. Div. 1995). . . . . 33

People v. Castillo, 868 N.E.2d 185 (N.Y. 2007). . . . . . . . 36

People v. Cunningham, 424 N.Y.S.2d 240 (App. Div. 1980). . . . 44

People v. Foster, 826 N.Y.S.2d 288 (App. Div. 2006). . . . . . 37

People v. Hayne, 695 N.E.2d 714 (N.Y. 1998). . . . . . . . . 44

People v. Kilpatrick, 531 N.Y.S.2d 262 (App. Div. 1988),
     abrogated on other grounds by
     People v. Gray, 652 N.E.2d 919 (N.Y. 1995). . . . . . . . 37

People v. Lee, 602 N.Y.S.2d 138 (App. Div. 1993). . . . . . . 34

People v. Patton, 585 N.Y.S.2d 431 (App. Div. 1992). . . . . . 33

People v. Pena, 406 N.E.2d 1347(N.Y. 1980). . . . . . . . . . 37

People v. Safon, 560 N.Y.S.2d 552 (App. Div. 1990). . . . . . 34

Pepper v. United States, 562 U.S. 476 (2011). . . . . . . 14, 15

Republic of Ecuador v. Chevron Corp., 638 F.3d 384
     (2d Cir. 2011). . . . . . . . . . . . . . . . . . . . . 21

Shepard v. United States, 544 U.S. 13 (2005). . . . . 27, 28, 32

Stephenson v. Davenport Community Sch. Dist., 110 F.3d 1303
     (8th Cir. 1997). . . . . . . . . . . . . . . . . . . . 19

Stinson v. United States, 508 U.S. 36 (1993). . . . . 16, 38, 39

Sykes v. United States, 564 U.S. 1 (2011).. . . . . . . . . . 9

United States v. Acosta, 470 F.3d 132 (2d Cir. 2006). . . 24, 26

United States v. Barker, 723 F.3d 315 (2d Cir. 2013). . . . . 27

United States v. Barnett, 2009 WL 613208
     (S.D.N.Y. March 4, 2009).. . . . . . . . . . . . . . 5, 76

United States v. Barnett, No. 90 Cr. 913,
     2001 WL 883119 (S.D.N.Y. Aug. 2001). . . . . . . . . 5, 7

United States v. Barnett, No. 90 Cr. 913,
     2010 WL 3001974 (S.D.N.Y. July 19, 2010. . . . . . . 6, 7

United States v. Bell, 840 F.3d 963 (8th Cir. 2016).. . 35, 39

United States v. Booker, 543 U.S. 220 (2005). . . . . . . passim

United States v. Brown, 52 F.3d 415 (2d Cir. 1995). . . . . . 33

United States v. Carmichael, 408 F. App'x 769 (4th Cir.
     2011). . . . . . . . . . . . . . . . . . . . . . . . 44

United States v. Castleman, 134 S. Ct. 1405 (2014). . 29, 31, 34

United States v. Castro-Vazquez, 802 F.3d 28 (1st Cir.
     2015). . . . . . . . . . . . . . . . . . . . . . . . 36

United States v. Diaz, 2016 WL 4524785
     (W.D.N.Y. Aug. 30, 2016).. . . . . . . . . . . . . . 43

United States v. Doe, 810 F.3d 132 (3d Cir. 2015).. . . . . . 18

United States v. Eason, 829 F.3d 633 (8th Cir. 2016). . . . . 36

United States v. Foote, 784 F.3d 931 (4th Cir. 2015). . . . . 18

United States v. Gardner, 823 F.3d 793 (4th Cir. 2016). . . . 36

United States v. Hook, 195 F.3d 299 (7th Cir. 1999).. . . . . 21

United States v. Johnson, 220 F. Supp.3d 264
      (E.D.N.Y. 2016). . . . . . . . . . . . . . . . . . . . 34

United States v. Lockley, 632 F.3d 1238 (11th Cir. 2011). . . 44

United States v. Mitchell, 743 F.3d 1054 (6th Cir. 2014). . . 45

United States v. Moncrieffe, 167 F. Supp.3d 383 (E.D.N.Y.
      2016). . . . . . . . . . . . . . . . . . . . . . . . . 35

United States v. Parnell, 818 F.3d 974 (9th Cir. 2016). . . . 36

United States v. Potes-Castillo, 638 F.3d 106 (2d Cir.
      2011). . . . . . . . . . . . . . . . . . . . . . . . . 38

United States v. Prince, 772 F.2d 1173 (9th Cir. 2014). . . . 44

United States v. Reyes, 691 F.3d 453 (2d Cir. 2012). . . . 24, 27

United States v. Roberts, 9 F.3d 1537 (2d Cir. 1993). . . . . . 7

United States v. Rollins, 836 F.3d 737 (7th Cir. 2016)
      (en banc). . . . . . . . . . . . . . . . . . 38, 39, 40

United States v. Rosa, 507 F.3d 142 (2d Cir. 2007). . . . . . 28

United States v. Shell, 789 F.3d 335 (4th Cir. 2015). . . . . 39

United States v. Shuck, 481 F. App'x 600 (11th Cir. 2012) . . 45

United States v. Smith, 582 F. App'x 590 (6th Cir. 2014). . . 44

United States v. Soto-Rivera, 811 F.3d 53 (1st Cir. 2016). . . 39

United States v. Thrower, 584 F.3d 70 (2d Cir. 2009). . . . . 43

United States v. Van Mead, 773 F.3d 429 (2d Cir. 2014). . 23, 24

United States v. Winston, 850 F.3d 677 (4th Cir.
      2017). . . . . . . . . . . . . . . . . . . . 35, 42, 43

Wood v. Milyard, 566 U.S. 463 (2012). . . . . . . . . . . . . 20

**STATUTES AND OTHER AUTHORITIES**

18 U.S.C. § 16. . . . . . . . . . . . . . . . . . . . . . . . 30

18 U.S.C. § 16(a). . . . . . . . . . . . . . . . . . . 30

18 U.S.C. § 3553(a). . . . . . . . . . . . . . . . 13, 15

18 U.S.C. § 3553(b). . . . . . . . . . . . . . . . . . 16

18 U.S.C. § 3553(b)(1). . . . . . . . . . . . . . . 15, 16

18 U.S.C. § 3582(c). . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 922(g). . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 922(g)(1). . . . . . . . . . . . . . . . . 4

18 U.S.C. § 924(c). . . . . . . . . . . . . . . . 4, 6, 7

18 U.S.C. § 924(e)(2)(B)(ii). . . . . . . . . . . . . 3, 8

21 U.S.C. § 841(b)(1)(A). . . . . . . . . . . . . . . . 4

21 U.S.C. § 841(b)(1)(c). . . . . . . . . . . . . . . . 4

21 U.S.C. § 846. . . . . . . . . . . . . . . . . . . . 4

21 U.S.C. § 856(a)(1). . . . . . . . . . . . . . . . . 5

28 U.S.C. § 2244(b)(2). . . . . . . . . . . . . . . . 14

28 U.S.C. § 2244(b)(2)(A). . . . . . . . . . . . . 11, 41

28 U.S.C. § 2244(b)(3)(A). . . . . . . . . . . . . . 10

28 U.S.C. § 2244(b)(4). . . . . . . . . . . . . . . . 40

28 U.S.C. § 2255. . . . . . . . . . . . . . . . . . passim

28 U.S.C. § 2255(a). . . . . . . . . . . . . . . 2, 11, 22

28 U.S.C. § 2255(f)(3). . . . . . . . . . . . . . . . 2

28 U.S.C. § 2255(h). . . . . . . . . . . . . . . . . 10

28 U.S.C. § 2255(h)(2). . . . . . . . . . . . . . . 11, 41

28 U.S.C. § 994(a)(1). . . . . . . . . . . . . . . . 19

28 U.S.C. § 994(p). . . . . . . . . . . . . . . . . . . . . . 19

Black's Law Dictionary 634 (10th ed. 2014). . . . . . . . . 26, 29

N.Y. Penal Law § 160.00.. . . . . . . . . . . . . . . . . 32, 44

N.Y. Penal Law § 160.00(1). . . . . . . . . . . . . . . . . . 33

N.Y. Penal Law § 160.15.. . . . . . . . . . . . . . . 31, 32, 36

N.Y. Penal Law § 160.15(2). . . . . . . . . . . . . . . . . . 36

N.Y. Penal Law § 160.15(4). . . . . . . . . . . . . . . . . . 36

United States Sentencing Guidelines

    Ch. 5 Table. . . . . . . . . . . . . . . . . . . . . . . 5

    § 4B1.1. . . . . . . . . . . . . . . . . . . . . . . 5, 22

    § 4B1.2. . . . . . . . . . . . . . . . . . . . . . _passim_

    § 4B1.2(a).. . . . . . . . . . . . . . . . . . 12, 13, 40

    § 4B1.2(a)(1). . . . . . . . . . . . . . . . . . . . . 23

    § 4B1.2(a)(2). . . . . . . . . . . . . . . . . . . . . 23

    § 4B1.2(1)(i). . . . . . . . . . . . . . . 23, 24, 28, 29

    § 4B1.2(1)(ii).. . . . . . . . . . . . . . . 23, 24, 28

    § 5K2.0, comment. (backg'd). . . . . . . . . . . . . 17

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
```

**BERNARD BARNETT,**            :      **90 CR 913 (LAP)**
                                         **16 CV 3611 (LAP)**

                        *Petitioner,*     :

          - against -            :

UNITED STATES OF AMERICA,       :

                     Respondent.   :

```
------------------------------------X
```

### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR
### <u>CORRECT SENTENCE BY A PERSON IN CUSTODY</u>

This Memorandum of Law is submitted in support of petitioner Bernard Barnett's motion to vacate and correct his sentence, filed <u>pro se</u>, pursuant to 28 U.S.C. § 2255, on May 9, 2016.

In August 1992, Mr. Barnett was sentenced by Hon. David Edelstein under the then-mandatory Sentencing Guidelines to life imprisonment, a sentence within the then-binding range. The Court had determined that Barnett was a "career offender" under U.S.S.G. § 4B1.2, which resulted in a mandatory sentencing range of 360 months to life imprisonment. Absent the career-offender designation, his Guidelines range was 292 to 365 months.

As discussed below, in light of the Supreme Court's decision in <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015), Mr. Barnett

does not qualify as a Career Offender. One of the two necessary predicates, a New York conviction under an unspecified subsection of the first-degree robbery statute, qualified as a crime of violence only under the residual clause voided by Johnson. Therefore, his mandatory-Guidelines sentence of life imprisonment violates the Due Process Clause.

The Court should grant this motion, vacate the sentence, and resentence Mr. Barnett without considering the Career Offender Guideline.

## STATEMENT OF JURISDICTION

This Court has jurisdiction to rule on this motion under 28 U.S.C. § 2255, which permits a federal inmate to seek vacatur of his sentence on the ground that the sentence "was imposed in violation of the Constitution or laws of the United States or . . . was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

This motion is timely under § 2255(f)(3), which sets forth a one-year period of limitations starting from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). The "right asserted" here is the right not to be sentenced under the unconstitutionally vague "residual clause" of the mandatory Career Offender Guideline, U.S.S.G. §

4B1.2 (Nov. 1, 1989), which is identical to the residual clause in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii) ("ACCA"). This right was "initially recognized" on June 26, 2015 by the Supreme Court in Johnson, which invalidated the ACCA's residual clause as unconstitutionally vague in violation of the Due Process Clause.

On May 9, 2016, Mr. Barnett filed a pro se 2255 motion to vacate or correct his sentence, under 28 U.S.C. § 2255, based on, among other things, the Supreme Court's decision in Johnson.[1]

Finally, although this § 2255 motion is not Mr. Barnett's first, the Second Circuit has authorized the filing of this motion in this Court under 28 U.S.C. § 2255(h). See Bernard Barnett v. United States, 2d Cir. Docket No. 16-13147 Order of October 26, 2016 (granting leave to file successive § 2255 motion based on Johnson), ECF Nos. 20, 21.

The Circuit's order authorizing this motion further directed the Court to stay this case pending the Supreme Court's decision in Beckles v. United States, 136 S. Ct. 2510 (U.S. cert. granted June 27, 2016).

The Supreme Court decided Beckles on March 6, 2017. See Beckles v. United States, 137 S. Ct. 886 (2017). Beckles held

_____

[1]    See Pet'r mot. to vacate sentence, ECF No. 484, United States v. Bernard Barnett, Docket No. 90-cr-913 (S.D.N.Y.).

3

that the post-Booker "advisory" Guidelines, not at issue in this pre-Booker case, are not subject to a Johnson-based vagueness challenge.

## QUESTION PRESENTED

Whether the life-term of imprisonment, imposed in 1992 under the Career Offender provision of the then-mandatory Sentencing Guidelines, should be vacated in light of Johnson v. United States, 135 S. Ct. 2551 (2015), invalidating an identically worded residual clause of the ACCA as unconstitutionally vague.

## STATEMENT OF FACTS

### 1.  Procedural history

Mr. Barnett was convicted after a jury trial in December 1991 of the following six counts: **(1)** conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846 (Count One); **(2)** possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(b)(1)(A)) (Count Three); **(3)** possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(b)(1)(c) (Count Four); **(4)** use of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Five); **(5)** possessing a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1) (Count Six); and **(6)** maintaining a place to manufacture and distribute a controlled

substance (21 U.S.C. § 856(a)(1)) (Count Seven). <u>See</u> Judgment and Statement of Reasons; PSR at 1.[2]

The Probation Office prepared a presentence report ("PSR").[3] It determined that, without the Career Offender designation,

Mr. Barnett's total offense level would be 36, and his Criminal History Category would be Category V. <u>See</u> PSR at ¶¶ 141, 146. This would have yielded in a Guidelines range of 292 to 365 months. <u>See</u> U.S.S.G. Ch. 5 Table (Nov. 1, 1991).

But the PSR concluded that Barnett was a Career Offender under § 4B1.1 of the Guidelines. PSR at ¶ 146.[4] The two alleged qualifying predicates were: (1) a 1974 conviction in Bronx County Supreme Court for robbery in the first degree (resulting from a 1972 arrest), PSR at ¶ 141; and (2) a 1984 conviction, in the Southern District of New York, for conspiracy to distribute narcotics, PSR at ¶¶ 144. <u>See also</u> <u>United States v. Barnett</u>, No.

---

[2]      <u>See</u> <u>Barnett v. United States</u>, 870 F.Supp. 1197, 1200 (S.D.N.Y. 1994) (DNE); <u>United States v. Barnett</u>, 2009 WL 613208 (S.D.N.Y. March 4, 2009) (LAP).

[3]      The PSR is submitted to the Court under seal.

[4]      As discussed below, a defendant is subject to punishment as a Career Offender under the Guidelines if "(1) the defendant was at least eighteen years old at the time of the instant offense; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1 (Nov. 1, 1991).

90 Cr. 913, 2001 WL 883119 at *1 (S.D.N.Y. Aug. 3, 2001) (LAP)
(Barnett was sentenced under the "Career Offender" provision "by
virtue of a prior narcotics felony conviction in 1982" and a
"robbery conviction in 1972.").

Using the Career Offender Guideline, the PSR concluded that
the total offense level was 37 and that Mr. Barnett fell in
Criminal History Category VI. This yielded a then-binding
sentencing range of 360 months to life imprisonment. PSR at 34, ¶
150. And with the addition of the mandatory 60-month consecutive
sentence on the § 924(c) count, the effective range of 420 months
to life imprisonment. Id. at ¶ 149.

On August 13, 1992, Mr. Barnett was sentenced. And "Judge
Edelstein relied on the Probation Office's pre-sentence
investigation to determine that Defendant was a career offender."
United States v. Barnett, No. 90 Cr. 913, 2010 WL 3001974 at *1
(S.D.N.Y. July 19, 2010) (LAP). Judge Edelstein sentenced Barnett
to a term of life imprisonment on Count One (the narcotics
conspiracy) and on Count Three (the substantive count of
possession with intent to distribute crack). The court imposed
prison terms ranging from five to thirty years on the remaining
counts, all terms to run concurrently. See Judgment and Statement
of Reasons.[5]

---

[5]    He was sentenced to 30 years on Count Four (heroin
count), 10 years on Count Six (felon in possession), 20 years on
Count Seven (maintaining a place for narcotics distribution),

In October 1993, the Second Circuit affirmed Barnett's conviction and sentence by summary order. <u>United States v. Roberts</u>, 9 F.3d 1537 (2d Cir. 1993) (table).

"Thereafter, Barnett began filing a series of collateral attacks against his conviction in various district and circuit courts, almost all of which were rejected as the basis for collateral relief." <u>Barnett</u>, 2001 WL 883119 at *1; <u>see</u> <u>also</u> <u>Barnett v. United States</u>, 2012 WL 1003594 (S.D.N.Y. 2012) (LAP); <u>Barnett v. United States</u>, 870 F.Supp. 1197 (S.D.N.Y. 1994) (DNE).

However, "[o]ne of Barnett's petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 was filed in the United States Court for the Middle District of Pennsylvania. In that case, the court granted Barnett's <u>Bailey v. United States</u>, 516 U.S. 137 (1995) claim and ordered that Barnett's conviction and five-year sentence pursuant to 18 U.S.C. § 924(c) be vacated." <u>Barnett</u>, 2001 WL 883119 at * 1, n.2.[6]

**2.   The Supreme Court's decision in <u>Johnson v. United States</u>**

On June 26, 2015, the Supreme Court issued <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015), which struck down the residual

---

"all to be served concurrently" along with the two life sentences (on Counts One and Three). <u>See</u> Judgment at 2. In addition, a 5-year consecutive sentence was imposed on the § 924(c) count. <u>Id.</u>

[6]    Mr. Barnett also moved unsuccessfully for a reduction in sentence under 18 U.S.C. § 3582(c). <u>United States v. Barnett</u>, 2010 WL 3001974 (S.D.N.Y. 2010) (LAP); <u>United States v. Barnett</u>, 2009 WL 613208 (S.D.N.Y. 2009) (LAP).

clause of Armed Career Criminal Act ("ACCA"), 18 U.S.C. §
924(e)(2)(B)(ii), as unconstitutionally vague under the Due
Process Clause.

The defendant in <u>Johnson</u> pled guilty to being a felon in
possession of a firearm, in violation of 18 U.S.C. § 922(g). At
sentencing, the court determined that he had three prior
convictions for a violent felony, including a state conviction
for possessing a short-barreled shotgun. This conviction
qualified as a violent felony under the ACCA's residual clause,
the court ruled, because it "otherwise involves conduct that
presents a serious potential risk of physical injury to another."
<u>Id.</u> at 2556. The court imposed a sentence of 15 years'
imprisonment, the ACCA minimum. The sentence was affirmed on
appeal. <u>Id.</u>

The Supreme Court vacated Johnson's sentence on the ground
that the residual clause was unconstitutionally vague. "Two
features of the residual clause," the Court explained, "conspire
to make it unconstitutionally vague." <u>Id.</u> at 2557. <u>First</u>, "the
residual clause leaves grave uncertainty about how to estimate
the risk posed by a crime" by tying "the judicial assessment of
risk to a judicially imagined 'ordinary case' of a crime" rather
than "to real world facts or statutory elements." <u>Second</u>, "the
residual clause leaves uncertainty about how much risk it takes
for a crime to qualify as a violent felony," since (once again)

8

the measuring of risk concerns not real-world facts but "a judge-imagined abstraction." Id. at 2558. In combination, these two facets of the residual clause produce "more unpredictability and arbitrariness than the Due Process Clause tolerates." Id.

Johnson recognized that its invalidation of the residual clause as unconstitutionally vague overruled two prior cases upholding the same provision against void-for-vagueness challenges -- James v. United States, 550 U.S. 192 (2007), and Sykes v. United States, 564 U.S. 1 (2011). Johnson thus announced that "[o]ur contrary holdings in James and Sykes are overruled." 135 S. Ct. at 2563.

Johnson's holding is unequivocal: "We hold that imposing an increased sentence under the residual clause . . . violates the Constitution's guarantee of due process." Id. at 2563. While the "remainder of the [ACCA's] definition of a violent felony" remains intact, the residual clause was void. Id.

**3.   The Second Circuit authorizes this § 2255 motion**

Johnson gives Mr. Barnett a new and previously unavailable ground for relief. From Johnson, it follows that the residual clause of the mandatory, pre-Booker Career Offender Guideline is void. And, as argued below, his conviction for robbery in the first degree no longer qualifies as a "crime of violence" after Johnson. Therefore, his Career Offender-based sentence should be

vacated, and he should be resentenced without that substantial enhancement.

Because Mr. Barnett  has filed at least one prior motion under § 2255, he required permission from the Second Circuit before filing another motion to vacate his sentence of life imprisonment in light of <u>Johnson</u>. <u>See</u> 28 U.S.C. §§ 2255(h) & 2244(b)(3)(A). He filed such a motion in September 2016.

On October 26, 2016, the Second Circuit granted Mr. Barnett permission to file a second or successive § 2255 motion based on <u>Johnson</u>. The Circuit authorized the Court to consider this § 2255 motion, which it noted "argues, inter alia, that <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015), has invalidated a certain provision of the United States Sentencing Guidelines, entitling him to a sentence reduction." <u>Barnett v. United States</u>, 2d Cir. Docket No. 16-3147, ECF No. 20 (Order of Oct. 26, 2016) (granting leave to file successive § 2255 motion based on <u>Johnson</u>), ECF No. 21 (same).

**ARGUMENT**

**Because Mr. Barnett Satisfies the Requirements for a Successive Motion and Because His Life Sentence, Imposed under the Mandatory Guidelines in 1992, Is Unlawful under <u>Johnson</u>, the Court Should Vacate that Sentence and Resentence Him.**

To prevail in this successive motion, Mr. Barnett must show two things. First, he must demonstrate that the <u>Johnson</u> claim in this motion is based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. §§ 2255(h)(2) & 2244(b)(2)(A) & (b)(4). Second, he must demonstrate that in light of <u>Johnson</u>, his life sentence "was imposed in violation of the Constitution or laws of the United States or . . . was in excess of the maximum authorized by law." <u>Id.</u> § 2255(a).

Because Mr. Barnett succeeds on both grounds, this Court should vacate his sentence and resentence him without considering the Career Offender Guideline.

### <u>Point I</u>

**<u>Johnson</u> Applies to Sentences Imposed under Mandatory pre-<u>Booker</u> Career Offender Guidelines.**

The residual clause declared unconstitutional in <u>Johnson</u> is identical to the residual clause in the Career Offender Guidelines, § 4B1.2.  In <u>Beckles v. United States</u>, 137 S. Ct. 886 (2017), the Supreme Court held that the <u>Johnson</u> vagueness

doctrine did not apply to the advisory Guidelines for the sole reason that they were advisory. The clear implication is that Johnson must apply to the mandatory Guidelines that were in effect before United States v. Booker, 543 U.S. 220 (2005).

Beckles held that "the advisory Sentencing Guidelines, including § 4B1.2(a)'s residual clause, are not subject to a challenge under the void-for-vagueness doctrine." 137 S. Ct. at 896. It reasoned that "the advisory Guidelines" -- unlike their pre-Booker mandatory counterpart -- "do not fix the permissible range of sentences." Id. at 892. It did not find the Guidelines' residual clause any less vague than the ACCA's. See id. at 890 ("This Court held in [*Johnson*] that the identically worded residual clause in the [ACCA] was unconstitutionally vague.").

Thus, Beckles's reasoning depended on the distinction between advisory and mandatory Guidelines. Beckles confirms that Johnson renders the mandatory Career Offender Guideline's residual clause unconstitutionally vague.

The Court limited its holding to the "advisory" Guidelines. "We hold only that the advisory Sentencing Guidelines, including § 4B1.2(a)'s residual clause, are not subject to a challenge under the void-for-vagueness doctrine." Id. at 896 (emphases added); see id. at 890 ("Because we hold that the advisory Guidelines are not subject to vagueness challenges under the Due Process Clause, we reject petitioner's argument.") (emphasis

12

added); id. at 895 ("[W]e hold that the advisory Sentencing
Guidelines are not subject to a vagueness challenge under the Due
Process Clause") (emphasis added); id. at 897 ("Because the
advisory Sentencing Guidelines are not subject to a due process
vagueness challenge, § 4B1.2(a)'s residual clause is not void for
vagueness.") (emphasis added).

This is no accident: Beckles' rationale rests on the
distinction between advisory and mandatory Guidelines. As the
Supreme Court explained, the Guidelines "were initially binding
on district courts," but "this Court in Booker rendered them
'effectively advisory.'" Id. at 894 (quoting United States v.
Booker, 543 U.S. 220, 245 (2005)). As a result, the Guidelines
are now just "one of the sentencing factors" courts are required
to consider. Id. at 893 (citing § 3553(a)). Courts "may no longer
rely exclusively on the Guidelines range," Beckles, 137 S. Ct. at
894, and the Guidelines no longer "'constrain [district courts']
discretion,'" id. at 894 (citation omitted). The advisory
Guidelines "do not mandate any specific sentences" any more than
the other § 3553(a) factors. Id. at 896. Thus, because "the
advisory Guidelines do not fix the permissible range of
sentences," but "merely guide the exercise of a court's
discretion," they "are not subject to a vagueness challenge under
the Due Process Clause." Id. at 892.

13

The Court also relied on the distinction between the
advisory Guidelines and mandatory Guidelines to explain why the
"advisory Guidelines do not implicate the twin concerns
underlying vagueness doctrine —- [1] providing notice and [2]
preventing arbitrary enforcement." Beckles, 137 S. Ct. at 894. As
to notice, "even perfectly clear Guidelines could not provide
notice to a person who seeks to regulate his conduct so as to
avoid . . . an enhanced sentence under the career-offender
guideline [because] the sentencing court retains discretion to
impose the [same] enhanced sentence . . . 'based on a
disagreement with the Commission's views.'" Id. (quoting Pepper
v. United States, 562 U.S. 476, 501 (2011)).

But under the mandatory regime, a defendant had a
substantial due process interest in a sentence within the
mandatory range. Burns v. United States, 501 U.S. 129, 138
(1991). After Booker, "'[t]he due process concerns that . . .
require notice in a world of mandatory Guidelines no longer'
apply." Beckles, 137 S. Ct. at 894 (quoting Irizarry v. United
States, 553 U.S. 708, 714 (2008)). Any due process expectation in
a sentence within the Guidelines range "'did not survive our
decision in [Booker], which invalidated the mandatory features of
the Guidelines.'" Id. (quoting Irizarry, 553 U.S. at 713).

Similarly, the "advisory Guidelines also do not implicate"
the concern with arbitrary enforcement. Beckles, 137 S. Ct. at

14

894. District courts do not "enforce" the advisory Guidelines, but rely on them "merely for advice in exercising [their] discretion." Id. at 895. The mandatory Guidelines, in contrast, "[bound] judges and courts in . . . pass[ing] sentence in criminal cases," Mistretta v. United States, 488 U.S. 361, 391 (1989), and "[had] the force and effect of laws, prescribing the sentences criminal defendants [were] to receive," id. at 413 (Scalia, J., dissenting).

The holding and reasoning in Beckles thus confirm that Johnson renders the residual clause of the mandatory Guidelines unconstitutionally vague.

**A.   Because the mandatory Guidelines fixed the permissible range of sentences, (1) the pre-Booker residual clause is subject to Johnson's vagueness analysis, and (2) Johnson's rule applies retroactively in pre-Booker cases.**

Unlike the "advisory" Guidelines -- governed by § 3553(a) -- that judges are **now** free to reject "'based on a disagreement with the Commission's views,'" Beckles, 137 S. Ct. at 894 (quoting Pepper, 562 U.S. at 501), the law in effect when Mr. Barnett was sentenced -- namely 18 U.S.C. § 3553(b)(1) -- made the Guidelines "mandatory and impose[d] binding requirements on all sentencing judges." Booker, 543 U.S. at 259. In addition, under Welch, Johnson's rule is retroactive to cases challenging Career Offender sentences imposed under mandatory Guidelines..

1. **The pre-Booker Guidelines were "mandatory and binding" on courts and "fix[ed] the permissible range of sentences."**

Before the 2005-decision in Booker, the Guidelines "[had] the force and effect of laws," id. at 234 (citing Mistretta, 488 U.S. at 391; Stinson v. United States, 508 U.S. 36, 42 (1993)), because of § 3553(b), a mandatory directive -- excised in Booker, 543 U.S. at 259 -- that required "that the court 'shall impose a sentence of the kind, and within the range' established by the Guidelines, subject to departures in specific, limited circumstances," Booker, 543 U.S. at 234 (emphasis in original) (quoting 18 U.S.C. § 3553(b)(1)).

Thus, as Booker observed, "subsection (b)" of § 3553 made the Guidelines "mandatory and binding on all judges." Booker, 543 U.S. at 233. And "[b]ecause they [were] binding on judges, . . . the [mandatory] Guidelines ha[d] the force and effect of laws." Booker, 543 U.S. at 234 (citing Mistretta, 488 U.S. at 391; Stinson v. United States, 508 U.S. 36, 42 (1993)). Departures were determined by considering "only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." 18 U.S.C. § 3553(b) (emphasis added). And the policy statements and commentary, which prohibited and restricted departures, were themselves "binding." Stinson, 508 U.S. at 42-43. Courts were not permitted "to decide for themselves, by reference to the . . . goals of" § 3553(a)(2), "whether a given

16

factor ever [could] be an appropriate sentencing consideration,"
<u>Koon v. United States</u>, 518 U.S. 81, 108 (1996), or to "substitute
their policy judgments for those of Congress and the Sentencing
Commission," U.S.S.G. § 5K2.0, comment. (backg'd) (2003). "In
most cases, as a matter of law, . . . no departure [was] legally
permissible [and] the judge [was] bound to impose a sentence
within the Guidelines range." <u>Booker</u>, 543 U.S. at 234.

So, unlike the advisory Guidelines, the mandatory Guidelines
"**fix[ed] the permissible range of sentences**." <u>Beckles</u>, 137 S. Ct.
at 892 (emphasis added). As <u>Booker</u> explained, "binding rules set
forth in the Guidelines limited the severity of the sentence that
the judge could lawfully impose," <u>Booker</u>, 543 U.S. at 226,
mandating the maximum and minimum sentence authorized, <u>id.</u> at 227
(Guidelines "mandated that the judge select a sentence between
360 months and life imprisonment"); <u>id.</u> at 236 ("judge's finding
increased the maximum sentence" in Booker's case "from 210 months
to a life sentence," and in Fanfan's case "from 78 months to 235
months"). Courts were not "bound only by the statutory maximum,"
<u>id.</u> at 234, and there was no difference between the Guidelines
maximum and "the prescribed statutory maximum." <u>Id.</u> at 238
(emphasis omitted). Nor was there any difference between the
Guidelines minimum and a statutory mandatory minimum. See <u>Alleyne</u>
<u>v. United States</u>, 133 S. Ct. 2151, 2162-63 (2013).

As the circuits have recognized, the mandatory Guidelines, no less than statutes, set the minimum and maximum terms authorized. "Before Booker, the guidelines were the practical equivalent of a statute. Departures were permitted on specified grounds, but in that respect the Guidelines were no different from statutes, which often specify exceptions." Hawkins v. United States, 706 F.3d 820, 822 (7th Cir. 2013); see also Brown v. Caraway, 719 F.3d 583, 588 (7th Cir. 2013) ("For a prisoner serving a sentence imposed when the guidelines were mandatory, . . . the guidelines had the force and effect of law."); Narvaez v. United States, 674 F.3d 621, 630 (7th Cir. 2011) (erroneous career offender designation "illegally increased" sentence "beyond that authorized").

Due to the "legal force" of the mandatory Guidelines, an erroneous Career Offender designation resulted in a sentencing range that was greater than the "maximum authorized by law." United States v. Foote, 784 F.3d 931, 942 (4th Cir. 2015). "[T]here is no doubt" that the mandatory Guidelines were "law" and that an erroneous Career Offender designation "results in a sentence substantively not authorized by law." United States v. Doe, 810 F.3d 132, 160 (3d Cir. 2015); see also In re Hubbard, 825 F.3d 225, 234-35 (4th Cir. 2016) (rejecting government's argument that mandatory Guidelines "do not change the range of

legally permissible outcomes"); In re Patrick, 833 F.3d 584, 588-89 (6th Cir. 2016) (same).

Moreover, agency regulations -- even those that do not prescribe criminal punishment -- are "laws" subject to vagueness attack. See Beckles, 137 S. Ct. at 894 ("Laws that 'regulate persons or entities,' we have explained, must be sufficiently clear 'that those enforcing the law do not act in an arbitrary or discriminatory way.'") (quoting FCC v. Fox Television Stations, Inc., 567 U.S. 239, 253 (2012)); see also, e.g., Stephenson v. Davenport Community Sch. Dist., 110 F.3d 1303, 1309-11 (8th Cir. 1997); Kropp Forge Co. v. Sec'y of Labor, 657 F.2d 119, 122-24 (7th Cir. 1981). That the Guidelines were promulgated by the Sentencing Commission pursuant to delegated legislative authority, see 28 U.S.C. § 994(a)(1), then approved by Congress before taking effect, see 28 U.S.C. § 994(p), rather than enacted by Congress in the first instance, "lacks constitutional significance." Booker, 543 U.S. at 237.

In sum, unlike the advisory Guidelines, the mandatory Guidelines "fix[ed] the permissible range of sentences." Beckles, 137 S. Ct. at 892. Unless the Career Offender Guideline applied, the court did not have "discretion to impose the enhanced sentence." Id. at 894. The due process concern with providing notice is clearly implicated, see Burns v. United States, 501 U.S. 129 (1991) (holding that a court "may not . . . depart

19

upward" from a mandatory guideline range "without first notifying the parties" that it intends to do so), as is the concern with preventing arbitrary enforcement by judges, see Johnson, 135 S. Ct. at 2557, 2560 (analyzing four Guidelines cases to demonstrate that the residual clause "invites arbitrary enforcement by judges" because "it has proved nearly impossible to apply consistently") (internal citation omitted).

Johnson thus renders the mandatory Career Offender Guideline's residual clause unconstitutionally vague, just as it does the ACCA's identical residual clause.

## 2. The *Johnson* rule applies retroactively to *pre-Booker* sentences

The Supreme Court held in Welch v. United States, 136 S. Ct. 1257 (2016) that Johnson announced a new rule of substantive constitutional law that is retroactive on collateral review. If, as Beckles clearly implies, Johnson applies to the identical residual clause in the mandatory pre-Booker Career Offender Guidelines, it should be equally retroactive. There is "no case to support the proposition that a rule can be substantive in one context but procedural in another." In re Hubbard, 825 F.3d 225, 234 (4th Cir. 2016).[11]

---

[11]   The Government expressly and affirmatively asserted in Beckles that the mandatory Guidelines are subject to vagueness challenges, see Transcript of Oral Argument at 28, Beckles v. United States, 137 S. Ct. 886 (2017) (No. 15-8544), thereby waiving any argument that Johnson does not apply to the mandatory Guidelines. See Wood v. Milyard, 566 U.S. 463, 474 (2012).

## Point II

### Mr. Barnett's Sentence of Life Imprisonment Is Unlawful Because He Cannot Be Punished as a Career Offender after <u>Johnson</u>.

Mr. Barnett qualifies for relief under the plain language of § 2255: He is a "prisoner in custody under a sentence of a court established by Act of Congress" who "claim[s] the right to be released upon the ground that the sentence was imposed in

---

Likewise, the Government waived any argument that <u>Johnson</u>'s rule does not apply retroactively in mandatory Guidelines cases, having expressly taken the position that mandatory Guidelines, unlike advisory Guidelines, "impose[d] an insuperable barrier that requires a specific finding of fact before the judge can sentence outside the guidelines."  Transcript of Oral Argument at 41, <u>Beckles v. United States</u>, 137 S. Ct. 886 (2017) (No. 15-8544). The Government thus intentionally relinquished any claim that <u>Johnson</u> does not apply retroactively in mandatory Guidelines cases, and may not raise that argument here.

The Government is also judicially estopped from asserting these arguments now. "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." <u>See</u> <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749, 751 (2001) (internal quotation marks and citation omitted). The Government strategically adopted positions in <u>Beckles</u> (on retroactivity and mandatory Guidelines) in its effort to convince the Court to rule in its favor in that advisory Guidelines case, which the Court did.  <u>See</u> <u>Republic of Ecuador v. Chevron Corp.</u>, 638 F.3d 384, 389 n.4 (2d Cir. 2011) (explaining that for judicial estoppel to apply, the court need not have expressly adopted the government's position; "[t]he court need only adopt the position 'in some manner, such as by rendering a favorable judgment'"); <u>United States v. Hook</u>, 195 F.3d 299, 306 (7th Cir. 1999) ("[A] party who prevails on one ground in a lawsuit cannot turn around and in another lawsuit repudiate the ground.") (internal quotation marks and citation omitted).

violation of the Constitution . . . or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). His sentence to life imprisonment was based on a determination that he qualified as a Career Offender, a determination rendered unlawful by Johnson. The Court should therefore "vacate [and] set aside" his life  sentence and resentence him without considering the Career Offender Guideline.

**A.   The Career Offender Guideline**

A defendant is subject to punishment as a Career Offender under the Guidelines if, among other things, (1) "the instant offense of conviction is a conviction that is either a crime of violence or a controlled substance offense," and (2) "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1 (Nov. 1, 1989).

The Career Offender Guideline defined a "crime of violence" as follows:

> (1) the term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that --
>
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

22

U.S.S.G. § 4B1.2(1)(i)-(ii) (Nov. 1, 1989).[12] The underscored portion is the residual clause.

At Barnett's sentencing in 1992, Judge Edelstein ruled that he was a Career Offender because he had one prior conviction involving a controlled substance conviction and one prior crime-of-violence conviction. The crime-of-violence conviction was identified as Barnett's conviction in 1974 for a "Robbery 1st:" an offense he was alleged to have committed in 1972, in the Bronx. PSR at ¶141.

As argued below, first-degree robbery in New York (New York Penal Law § 160.15) does not "categorically" qualify as a crime of violence; therefore, Mr. Barnett should not have been sentenced as a Career Offender.

An offense can qualify as a "crime of violence" in three ways -- by falling within (1) the "residual clause" of §

---

[12]   The definition of "crime of violence" under the November 1, 1989 Guidelines is the same that existed until November 2016. **Compare** Guidelines Manual, Appendix C, Vol. I ["Amendments to the Guidelines Manual November 1, 1987, through November 1, 1997"], Amendment 268 (eff. Nov. 1, 1989) at 131-32 **with** U.S.S.G. § 4B1.2 (Nov. 1, 2015) (pre-2016 edition).

The subdivisions to § 4B1.2 were numbered differently, however. When Barnett was sentenced in 1992, the subdivisions were § 4B1.2(1)(i) (containing the "physical force" or elements clause); and § 4B1.2(1)(ii) (containing both the "exemplar crimes" and "residual" clauses). In 2014 and 2015, the force clause was numbered "4B1.2(a)(1)" and the exemplar and residual clauses were numbered "4B1.2(a)(2)." See Van Mead, 773 F.3d at 432.

4B1.2(1)(ii); (2) the "exemplar" or "enumerated" offense clause at the start of the same subsection; or (3) the "physical force" (or elements) clause of § 4B1.2(1)(i). See U.S.S.G. § 4B1.2(1)(i)-(ii) (Nov. 1, 1989); United States v. Van Mead, 773 F.3d 429, 432 (2d Cir. 2014).

Because Johnson struck the residual clause of the mandatory Guidelines as unconstitutionally vague, see supra, and because robbery is not one of the "exemplar" or enumerated crimes, the sole remaining question is whether it qualifies under the physical force clause. As discussed below, it does not.

**B.    The categorical approach**

The Career Offender Guideline, like the ACCA, requires courts to use the "categorical" approach to determine whether a particular offense qualifies as a crime of violence. Johnson, 135 S. Ct. at 2557; see Descamps v. United States, 133 S. Ct. 2276, 2283 (2013); United States v. Reyes, 691 F.3d 453, 457-58 (2d Cir. 2012); United States v. Acosta, 470 F.3d 132, 135 (2d Cir. 2006).

This approach requires that courts "look only to the statutory definitions -- i.e., the elements -- of a defendant's [] offense, and not to the particular facts underlying [the offense]," in determining whether the offense qualifies as a "violent felony" or "crime of violence." Descamps, 133 S. Ct. at 2283 (quotation marks and citation omitted); see Johnson, 135 S.

24

Ct. at 2557 (court must assess potential predicate offense "in terms of how the law defines the offense and not in terms of how an individual might have committed it on a particular occasion"); see also Esquivel-Quintana v. Sessions, 137 S. Ct. 1562, 1567-68 (2017) (the categorical approach looks to the statute of conviction, "rather than to the specific facts underlying the crime.").

Under the categorical approach, "[i]f the relevant statute has the same elements as the 'generic' [federal] crime," Descamps, 133 S. Ct. at 2283, then the statute is a categorical match with the federal offense and triggers the sentence enhancement. "But if the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as [a qualifying] predicate, even if the defendant actually committed the offense in its generic form. The key . . . is elements, not facts." Id.; see also Mellouli v. Lynch, 135 S. Ct. 1980, 1986 (2015) (Under the categorical approach, the defendant's "actual conduct is irrelevant to the inquiry.").

Because the categorical approach is concerned only with the conduct that the offense necessarily involves, courts must "presume that the state conviction 'rested upon ... the least of th[e] acts' criminalized by the statute, and then we determine whether that conduct would fall within the federal definition of

the crime." <u>Esquivel-Quintana</u>, 137 S. Ct. at 1568 (quoting <u>Johnson v. United States</u>, 559 U.S. 133, 137 (2010)); <u>see also</u> <u>Moncrieffe</u>, 569 U.S. at 191 (focusing "on the minimum conduct criminalized by the state statute"). A state conviction is thus a qualifying predicate "only if the least of the acts criminalized by the state statute falls within the generic federal definition" of the crime. <u>Esquivel-Quintana</u>, 137 S. Ct. at 1568. "Consequently, only the minimum criminal conduct necessary for conviction under a particular statute is relevant." <u>Acosta</u>, 470 F.3d at 135. <u>See also</u> <u>Descamps</u>, 133 S. Ct. at 2283 ("The key ... is elements, not facts.").

In a "narrow range of cases," what the Supreme Court has "dub[bed] the 'modified categorical approach'" may be applied but only if the statute is "divisible" and only if a "limited class of documents" is available. <u>Descamps</u>, 133 S. Ct. at 2283-84. A divisible statute "sets out one or more elements of the offense in the alternative[.]" <u>Id.</u> at 2281. "'Elements' are the 'constituent parts' of a crime's legal definition —- the things the 'prosecution must prove to sustain a conviction.'" <u>Mathis v.</u> <u>United States</u>, 136 S. Ct. 2243, 2248 (2016) (quoting Black's Law Dictionary 634 (10th ed. 2014)). So a court applying the modified categorical approach "may not 'analyze whether the <u>facts</u> underlying the state conviction satisfied the elements of the federal statute.' Rather, the modified categorical approach

simply provides a tool enabling courts to discover the <u>elements</u> of the defendant's prior conviction." <u>United States v. Barker</u>, 723 F.3d 315, 321 (2d Cir. 2013) (quoting <u>Descamps</u>, 133 S. Ct. at 2285). Where the statute of prior conviction is indivisible -- for example, because it lists alternative means rather than elements -- the modified approach does not apply. <u>Descamps</u>, 133 S. Ct. at 2282; <u>Mathis</u>, 136 S. Ct. at 2253-54.

Under the modified categorical approach, a court can examine a limited set of documents -- so-called "<u>Shepard</u> documents," <u>see</u> <u>Shepard v. United States</u>, 544 U.S. 13 (2005) -- to determine which subsection or provision of the statute the defendant was actually convicted under. <u>Id.</u> The limited set of documents are "the charging documents, jury instructions, plea agreement, plea colloquy, and similar sources[.]" <u>Esquivel-Quintana</u>, 137 S. Ct. at 1568 and n.1.

The Government bears the burden of both (1) providing the <u>Shepard</u> documents, and (2) proving that in light of those documents, the defendant was necessarily convicted of a version of the state offense that categorically qualifies as a violent felony. <u>See</u>, <u>e.g.</u>, <u>United States v. Reyes</u>, 691 F.3d 453, 458 (2d Cir. 2012) ("[T]he government must demonstrate that the conviction 'necessarily' rested on facts identifying the conviction as one for a 'crime of violence.'"). In the absence of

such documents, the Court "must presume that the [state] conviction rested upon nothing more than the least of the acts criminalized." <u>Moncrieffe v. Holder</u>, 133 S. Ct. 1678, 1684 (2013).

Here, the PSR and the sentencing court determined that Mr. Barnett's conviction for robbery in the first degree was a crime of violence. <u>See</u> PSR at ¶ 141; <u>see</u> New York Penal Law § 160.15. The PSR is not a qualifying "<u>Shepard</u> document," so any assertions in the PSR about the facts of the offenses are not relevant to the determination. <u>See United States v. Rosa</u>, 507 F.3d 142, 156 (2d Cir. 2007). Because there do not appear to be <u>Shepard</u> documents about the specific subsection of the first-degree robbery statute under which Barnett was convicted, this Court must treat the conviction as if it were under an unspecified subsection of § 160.15.

## C.   The "physical force" clause requires the intentional use of <u>violent</u> physical force

Because <u>Johnson</u> excised the residual clause, an offense can be a "crime of violence" only if it (1) is one of the "exemplar" or enumerated offenses (<u>i.e.</u>, "burglary of a dwelling, arson, or extortion, [or] involves use of explosives"), § 4B1.2(1)(ii) (Nov, 1, 1989); or (2) "has as an element the use, attempted use, or threatened use of physical force against the person of another," § 4B1.2(1)(i) (Nov, 1, 1989). Only the force clause is

28

at issue here, since robbery is not enumerated in § 4B1.2(1)(i)
(Nov. 1, 1989).

Two additional limitations are relevant.

First, "physical force" in both the ACCA and the Career
Offender Guideline means "great" and "violent force" -- i.e.,
"strong physical force" which is "capable of causing physical
pain or injury to another person." Johnson v. United States, 559
U.S. 133, 140 (2010) (emphasis in original) ("2010 Johnson").
"Even by itself," the Supreme Court explained, "the word
'violent' [as used in the ACCA] connotes a substantial degree of
force." And "[w]hen the adjective 'violent' is attached to the
noun 'felony,' its connotation of strong physical force is even
clearer." Id. The Court then approvingly cited Black's Law
Dictionary, which defines the term "violent felony" as a "'crime
characterized by extreme physical force, such as murder, forcible
rape, and assault and battery with a dangerous weapon." 2010
Johnson, 559 U.S. at 140-41 (emphasis added).

The Court expanded on this point four years later in United
States v. Castleman, describing "'[h]itting, slapping, shoving,
grabbing, pinching, biting, [and] hair pulling'" as "[m]inor uses
of force" that "may not constitute 'violence' in the generic
sense." 134 S. Ct. 1405, 1411-12 (2014). It is "'hard to describe
. . . as "violence" a squeeze of the arm [that] causes a

29

bruise.'" <u>Id.</u> at 1412 (citation omitted).

In sum, an offense must require the use (or attempted or threatened use) of "great," "strong," "extreme," and "violent" physical force to qualify as a crime of violence under the force clause. An offense that can be committed through relatively "[m]inor uses of force" -- by "'[h]itting, slapping, shoving, grabbing, pinching, biting, [and] hair pulling'" or by "a squeeze of the arm [that] causes a bruise," for instance -- does not.

<u>Second</u>, the statute must also require that the violent force be used intentionally. As construed by the Supreme Court in <u>Leocal v. Ashcroft</u>, 543 U.S. 1 (2004), and the Second Circuit in <u>Jobson v. Ashcroft</u>, 326 F.3d 367, 373 (2d Cir. 2003), in examining the similarly worded 18 U.S.C. § 16, "use[]" of physical force "contemplates only <u>intentional</u> conduct and refers only to those offenses in which . . . the perpetrator [] <u>intentionally employ[s] physical force</u>." <u>Id.</u> (emphases in original; internal quotations omitted); <u>see</u> <u>Garcia v. Gonzalez</u>, 455 F.3d 465, 468 (4th Cir. 2006) (holding that "intentional employment of physical force" is required under force clause of § 16(a)).

Because "use . . . of physical force" "connotes the intentional availment of force," <u>Leocal</u>, 43 U.S. at 9, an offense that can be committed without the intentional use, attempted use or threatened use of force is not a "violent felony" under the

force clause. <u>See</u> <u>Castleman</u>, 134 S. Ct. at 1414 n.8 ("Although
<u>Leocal</u> reserved the question whether a reckless application of
force could constitute a 'use' of force, the Court of Appeals
have almost uniformly held that recklessness is not
sufficient."); <u>Jones v. United States</u>, 689 F.3d 621, 626 (6th
Cir. 2012) ("When a crime requires only the mens rea of
recklessness it cannot qualify under the force subsection of the
ACCA.").

To be a crime of violence under the physical force clause,
in sum, an offense must categorically -- <u>i.e.</u>, necessarily, in
even its "most innocent" or "minimum" incarnation -- involve the
<u>intentional</u> use of <u>violent</u> physical force.

**D.   New York first-degree robbery is not a crime of violence
under the force clause.**

Section 160.15 of the New York Penal Law states:

A person is guilty of robbery in the first degree when
he forcibly steals property and when, in the course of
the commission of the crime or of immediate flight
therefrom, he or another participant in the crime:

1.   Causes serious physical injury to any person who
is not a participant in the crime; or

2.   Is armed with a deadly weapon; or

3.   Uses or threatens the immediate use of a dangerous
instrument; or

4.   Displays what appears to be a pistol, revolver or other
firearm . . . .

Robbery in the first degree is a class B felony.

31

N.Y. Penal Law § 160.15.[13]

As noted, no Shepard document shows that Mr. Barnett was convicted under a specific subsection of § 160.15. When applying the categorical approach to a divisible statute where the record does not indicate which particular subsection the defendant was convicted under, a court's task is to determine whether "the least of [the] acts" described in the statute qualifies as a predicate. 2010 Johnson, 559 U.S. at 137. And assuming that subsection (2) of first-degree robbery -- "forcibly stealing property" while "armed with a deadly weapon" -- is "the 'least of [the] acts'" criminalized in § 160.15, first-degree robbery in New York does not qualify as a crime of violence under the force clause.

To begin, while all robbery offenses in New York require "forcibl[e] stealing" by means of "us[ing] or threaten[ing] the immediate use of physical force upon another person," N.Y. Penal Law § 160.00, the degree of force can be minimal and less than the "violent" and "great" force required under 2010 Johnson.[14]

---

[13]   In the current version of first-degree New York robbery -- last amended in 1973 -- the first clause of subdivision four contains the following highlighted language that was "inserted" "eff[ective] Sept. 1, 1973": "Displays what appears to be a pistol, revolver, **rifle, shotgun, machine gun** or other firearm." N.Y. Penal Law § 160.15 (McKinney 2016) (emphasis added). Mr. Barnett's offense occurred in 1972.

[14]   2010 Johnson thus implicitly overruled the Second Circuit's 1995 holding that attempted New York robbery is a "violent felony" because it involves "physical force." United

New York robbery requires only as much force as needed for "[p]reventing or overcoming resistance to the taking of the property or to the retention thereof," or "[c]ompelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." N.Y. Penal Law § 160.00(1)-(2). And New York courts have made abundantly clear that this quantum of force is less than the "violent force" required by 2010 Johnson.

For example, someone commits robbery if accomplices form a "human wall that block[s] the victim's path as the victim attempt[s] to pursue someone who had picked his pocket." People v. Bennett, 631 N.Y.S.2d 834, 834 (App. Div. 1995). And "[t]he requirement that a robbery involve the use, or the threat of immediate use, of physical force does not mean that a weapon must be used or displayed or that the victim must be physically injured or touched." Id. (citations omitted); see also People v. Patton, 585 N.Y.S.2d 431, 431 (App. Div. 1992) ("By blocking the victim's passage, defendant aided in codefendant's retention of the property, and thereby participated in the robbery.").

Likewise, robbery occurs if the defendant "bumped his unidentified victim, took money, and fled while another forcibly

_____

States v. Brown, 52 F.3d 415, 425-26 (2d Cir. 1995). As 2010 Johnson held, mere "physical force" is not the requisite "violent force" under the force clause.

33

blocked the victim's pursuit," <u>People v. Lee</u>, 602 N.Y.S.2d 138, 139 (App. Div. 1993), or if a thief takes property and engages in a brief tug-of-war over it, <u>People v. Safon</u>, 560 N.Y.S.2d 552, 552 (App. Div. 1990) ("Proof that the store clerk grabbed the hand in which defendant was holding the money and the two tugged at each other until defendant's hand slipped out of the glove holding the money was sufficient to prove that defendant used physical force for the purpose of overcoming the victim's resistance to the taking.").

Thus, whether it's forming a human wall, bumping the victim, or engaging in a brief tug-of-war over the property, robbery can be committed in New York through the use of any small amount of physical force. This quantum of force falls short of the "strong," "great," "substantial," "extreme," and "violent" physical force required under the force clause, as held in 2010 <u>Johnson</u>, 559 U.S. at 140. If "'a squeez[ing] of the arm [that] causes a bruise'" falls short of the "strong" and "violent" force demanded by the force clause, <u>Castleman</u>, 134 S. Ct. at 1412, then so does the forming of a human wall, the bumping of a victim, or a brief tug-of-war over property.

That New York robbery does not require "<u>violent</u> force" has been confirmed by several courts considering the same question. <u>See</u> <u>United States v. Johnson</u>, 220 F. Supp.3d 264, 270-72; <u>id.</u> at 273 (E.D.N.Y. 2016) ("New York robbery is not a crime of violence

under the force clause.") (Cogan, J.); United States v. Avitto,

E.D.N.Y. No. 15-cr-265, Transcript of Sentencing on Mar. 14, 2016

("Although force is an element of [New York robbery], the violent

force required after Johnson is not. . . .  New York courts have

found conduct such as bumping a victim and taking his money,

shoving a victim aside to prevent pursuit of a co-defendant, and

engaging in a tug-of-war with a victim over the property being

stolen is sufficient to satisfy the 'force' element of the

robbery in the third degree.  None of these minimal exertions of

force rise to the level of 'violent force.'") (Ross, J.); United

States v. Moncrieffe, 167 F. Supp.3d 383, 404-05 (E.D.N.Y. 2016)

("The minimum conduct under any grade or subsection of the New

York robbery statute does not require violent physical force.")

(Weinstein, J.). Circuit courts considering robbery statutes of

other states that are materially identical to New York's robbery

statute have also concluded that the "violent" force element was

not satisfied.[15] In sum, the "forcible stealing" at the heart of

---

[15]   See United States v. Winston, 850 F.3d 677, 685 (4th Cir. 2017) (Virginia robbery -- which is committed where "the defendant approached the victim from behind, 'tapped her on the shoulder, and "jerked" her around by pulling her shoulder,' took her purse, and ran" -- does not necessarily include the use, attempted use, or threatened use of 'violent force.'"); United States v. Bell, 840 F.3d 963, 966-67 (8th Cir. 2016) (Missouri robbery -- which is committed where "the defendant 'bumped' [victim's] shoulder and 'yanked' her purse away from her,'" and "'nudged' [the victim]," engaging in a "'slight struggle' over the purse" -- is an offense that "does not necessarily require use of the type of violent force described by the Supreme Court

New York robbery does not require "violent force."

In first-degree robbery in New York, subdivision (2) of §
160.15 -- the most minimal conduct required to commit first-
degree robbery -- states that someone violates this law if she
forcibly steals property (without necessarily using "great" and
"violent force," supra) and is "armed with a deadly weapon."

Subdivision (2) does not require that the perpetrator use,
threaten to use, or display the weapon; such conduct falls under
subdivisions (3) and (4). See People v. Castillo, 868 N.E.2d 185,
186 (N.Y. 2007) ("Penal Law § 160.15(2) is not a lesser included
offense of Penal Law § 160.15(4) . . . . Although the
subdivisions of Penal Law § 160.15 share the common element of
forcible stealing, each encompasses a distinct additional
element. It is irrelevant that underlying facts may exist to
support more than one subdivision."). In short, "it is possible
to commit robbery with a deadly weapon without at the same time

_____

in Johnson."); United States v. Eason, 829 F.3d 633, 641 (8th
Cir. 2016) (same as to Arkansas robbery, which can be committed
by "jerking the door from [a victim], cornering [her] in the back
hallway and grabbing her dress"); United States v. Gardner, 823
F.3d 793, 803 (4th Cir. 2016) (same as to North Carolina robbery,
which can be committed by "pushing the victim's hand off of a
carton of cigarettes" or "push[ing] the shoulder of an
electronics store clerk, causing her to fall onto shelves while
the defendant t[akes] possession of a television"); United States
v. Parnell, 818 F.3d 974, 979 (9th Cir. 2016) (same as to
Massachusetts robbery, which can be committed by "any force,
however slight"); United States v. Castro-Vazquez, 802 F.3d 28,
37 (1st Cir. 2015) (same as to Puerto Rico robbery, which
requires only the "slightest use of force").

displaying a gun." <u>People v. Kilpatrick</u>, 531 N.Y.S.2d 262, 263 (App. Div. 1988), <u>abrogated on other grounds by</u> <u>People v. Gray</u>, 652 N.E.2d 919 (N.Y. 1995); <u>see also</u> <u>People v. Foster</u>, 826 N.Y.S.2d 288, 289 (App. Div. 2006) ("The defendant's guilt is predicated upon the forcible taking of property, coupled with the aggravating factor of any participant in the crime being armed with a deadly weapon.").

As New York's highest court explained after the enactment of subdivision (2), "one who commits robbery while carrying a 'deadly weapon' upon his person is now guilty of robbery in the first degree." <u>People v. Pena</u>, 406 N.E.2d 1347, 1350 n.2 (N.Y. 1980) (emphasis omitted). A showing "merely of possession" of a deadly weapon is all subdivision (2) requires. <u>Id.</u>

Thus, it is possible to commit first-degree robbery in New York without necessarily using the requisite "<u>violent</u> force." This offense is therefore not a "crime of violence" within the meaning of the force clause under the categorical approach: First-degree robbery can be committed by an armed person who never uses, threatens to use, or displays the weapon, and who commits the robbery using less than the "violent force" the force clause requires.

37

**E.   The Commentary to the Guideline (listing "robbery" and other offenses) has no effect after <u>Johnson</u> struck the residual clause.**

It is immaterial that "robbery" is listed as a "crime of violence" in Application Note 1 of the Commentary to U.S.S.G. § 4B1.2. The commentary was last amended in 2009 and thus before the Supreme Court's 2010 decision in <u>Johnson</u>, which effectively held that a "crime of violence" requires not just any "physical force," but specifically "<u>violent</u> force -- that is, force capable of causing physical pain or injury to another person." <u>Johnson</u>, 559 U.S. at 140 (emphasis in original). The commentary also predates the Court's 2015 <u>Johnson</u> ruling, which effectively deleted the guideline's residual clause.

Moreover, a Guideline's commentary "has no legal force standing alone," <u>United States v. Rollins</u>, 836 F.3d 737, 742 (7th Cir. 2016) (en banc), and "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." <u>Stinson v. United States</u>, 508 U.S. 36, 38 (1993); <u>see, e.g.</u>, <u>United States v. Potes-Castillo</u>, 638 F.3d 106, 111 (2d Cir. 2011) ("[W]e reject the government's reading [of the commentary] because it is inconsistent with the text of the Guideline."). If a Guideline and its commentary clash, and "following one will result in violating the dictates of the other, the Sentencing Reform Act itself commands compliance with the guideline." <u>Id.</u> at 43. That

is the case here: because New York robbery is not a "crime of violence" under the Guideline itself after <u>Johnson</u> struck the residual clause and as explained by the prior discussion on the force clause, using the Guideline's commentary to deem such robbery a "crime of violence" would "result in violating the dictates of the [guideline]." <u>Id.</u>; <u>see also</u> <u>United States v. Shell</u>, 789 F.3d 335, 340 (4th Cir. 2015) ("[T]he government skips past the text of § 4B1.2 to focus on its commentary . . . . But it is the text, of course, that takes precedence.").

With the residual clause stricken from the Guideline, the commentary does not "interpret or explain" any text in the Guideline, and is "inconsistent with" the text. <u>Stinson</u>, 508 U.S. at 38. Where, as here, the "commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the other, the Sentencing Reform Act itself commands compliance with the guideline." <u>Id.</u> at 43. All three circuits to have considered the question have held that, absent the residual clause, an offense cannot qualify as a crime of violence under the commentary alone. <u>See</u> <u>United States v. Bell</u>, 840 F.3d 963, 967-69 (8th Cir. 2016) (robbery); <u>Rollins</u>, 836 F.3d at 739, 741-43 (possession of a sawed-off shotgun); <u>United States v. Soto-Rivera</u>, 811 F.3d 53, 59-62 (1st Cir. 2016) (possession of a sawed-off shotgun).

As the First Circuit explained, after <u>Johnson</u> excised the residual clause, "there is nothing within § 4B1.2(a)'s text to serve as an anchor for Application Note 1's inclusion of [robbery] within the definition of crime of violence." <u>Soto-Rivera</u>, 811 F.3d at 60. Commentary "has no legal force standing alone." <u>Rollins</u>, 836 F.3d at 742. Accordingly, the commentary's simple pronouncement that "the residual clause covers this or that crime" -- including offenses as dissimilar as robbery, extortionate extension of credit, and possession of a silencer -- is not an interpretation at all.[16]

### Point III

**This Motion Necessarily "Relies on" (and "Contains") the Rule of 2015 <u>Johnson</u>, a New Constitutional Rule Made Retroactive by the Supreme Court, and thus Satisfies AEDPA's Gatekeeping Requirement.**

The Government may invoke 28 U.S.C. § 2244(b)(4)[17] and argue

---

[16]    Justices Ginsburg and Sotomayor, who concurred in <u>Beckles</u> on the narrow ground that the commentary precluded a constitutional vagueness challenge, <u>see</u> <u>Beckles</u>, 137 S. Ct. at 897-98, did not address (or reject) this argument: constitutional vagueness doctrine aside, commentary that does not actually interpret a textual provision -- and instead simply adds to it despite there being no intelligible textual hook -- is not controlling.

[17]    Section 2244(b)(4) states that a district court "must dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section." The general "requirements of this section" are set forth in § 2244(b)(2). In particular, the "requirement[]" relevant to this motion is set forth in subsection (A), which states that "[a] claim set forth in a second or successive

40

(as it has in opposing analogous successive § 2255 motions
invoking 2015 Johnson) that the Court should dismiss Mr.
Barnett's motion without considering its merits because it
"relies on" or "contains" the rule of 2010 Johnson rather than
that of 2015 Johnson. According to this argument, because 2010
Johnson did not involve a constitutional rule (and thus does not
satisfy § 2255(h)(2)'s requirement for successive motions), the
Court should dismiss this motion.[18]

Barnett's § 2255 motion "relies on a new [and retroactively
applicable] rule of constitutional law," i.e., the rule of
Johnson v. United States, 135 S. Ct. 2551 (2015) ("2015 Johnson")
that the  residual clause is void for vagueness in violation of
due process. But he must also invoke an additional rule (from
another case named Johnson -- Johnson v. United States, 559 U.S.
133 (2010)) -- to complete his attack on his sentence because of
Career Offender Guideline's two-pronged definition of a crime of
violence: its "residual" clause and "force" clause. So his § 2255
motion necessarily relies on both Johnson decisions, the

_____

[motion] . . . shall be dismissed unless the applicant shows that
the claim relies on a new rule of constitutional law, made
retroactive to cases on collateral review by the Supreme Court,
that was previously unavailable . . . ." 28 U.S.C. § 2244(b)(2)
(A) (emphasis added).

     [18]   Section 2255(h)(2) authorizes a successive § 2255
motion if it "contain[s] a new rule of constitutional law, made
retroactively to cases on collateral review by the Supreme Court,
that was previously unavailable."

decisions in 2010 and 2015, and is not procedurally barred, as the Fourth Circuit held recently held. See United States v. Winston, 850 F.3d 677, 681-82 (4th Cir. 2017) (addressing similar procedural argument in § 2255 motion of an ACCA petition).

In Winston, an ACCA defendant brought a second § 2255 motion based on 2015 Johnson's invalidation of the residual clause. In challenging his predicate Virginia robbery conviction, he also argued that Virginia robbery does not fall under the "force" clause of ACCA in light of the decision in 2010 Johnson. See Winston, 850 F.3d at 679-81.

The Fourth Circuit recognized that "Winston's claim depends on the interplay between Johnson II [from 2015], permitting post-conviction review of the ACCA-enhanced sentence, and Johnson I [from 2010], defining the scope of the force clause[.]" Winston, 850 F.3d at 682, n.4. Hence, "[a]ny argument that Winston's claim did not 'rely on' Johnson II [2015]," because the claim could not succeed based only on the invalidation of the residual clause, "does not present a procedural bar" but "presents the substantive argument whether, even after receiving the benefit of Johnson II, the defendant still is not entitled to relief, because his conviction nonetheless falls within the force clause." Id. Thus, the Fourth Circuit held, "Winston's claim for post-conviction relief 'relied on,' at least in part, the new rule of constitutional law announced in Johnson II." Id. at 682.

42

Here also, Barnett's § 2255 claim "depends on the interplay" between 2015 <u>Johnson</u>, which permits post-conviction review of sentences enhanced based on an unconstitutionally vague residual clause, and 2010 <u>Johnson</u>, "defining the scope of the force clause[.]" <u>See</u> <u>Winston</u>, 850 F.3d at 682, n.4. The claim, therefore, is not procedurally barred as it relies on, at least in part, and cannot succeed without the new rule of constitutional law announced in the 2015 <u>Johnson</u> decision.

Before 2015 <u>Johnson</u>, Barnett's robbery conviction would have qualified as a crime of violence under the residual clause. <u>See</u> <u>United States v. Diaz</u>, 2016 WL 4524785 at *5 (W.D.N.Y. Aug. 30, 2016) ("[P]rior to 2015 <u>Johnson</u>, Diaz had no viable challenge to his predicate robbery convictions because, even if he could have established that robbery in New York did not qualify under the ACCA's force clause [in light of 2010 <u>Johnson</u>], his prior convictions for third-degree robbery and attempted second-degree robbery would have qualified under the residual clause.").

In 2009, for instance, the Second Circuit ruled that the New York offense of larceny from a person was a violent felony under the residual clause. <u>United States v. Thrower</u>, 584 F.3d 70 (2d Cir. 2009). Larceny from a person, the Circuit held, "involves conduct that presents a serious potential risk of physical injury to another" because it "creates a risk of violent confrontation."

43

<u>Id.</u> at 74; <u>see</u> <u>id.</u> ("Larceny from the person raises the
possibility of a violent confrontation between the victim and
perpetrator or someone who witnesses the offense."). But larceny
from the person, in the ordinary case, is a pickpocketing or
purse snatching. <u>See, e.g.</u>, <u>People v. Hayne</u>, 695 N.E.2d 714, 715
(N.Y. 1998) (defendant took purse from chair on which victim sat
and from which purse hung); <u>People v. Cunningham</u>, 424 N.Y.S.2d
240, 241 (App. Div. 1980) ("Defendant stole a billfold from a
shoulder bag worn by a decoy policeman.").[19] So if larceny from a
person is a violent felony under the residual clause -- which the
Second Circuit had held it was -- so too would be a robbery.[20]

---

[19]   Larceny from the person is closely related to robbery:
It requires the taking of property but not the use, attempted
use, nor threatened use of force. Indeed, it is the presence of
force that transforms the crime from larceny to robbery. <u>See</u> New
York Penal Law § 160.00.

[20]   Every circuit that considered the issue concluded that
robbery, regardless of the force clause, qualified under the
residual clause (at least until 2015 <u>Johnson</u> voided it). <u>See,
e.g.</u>, <u>United States v. Davis</u>, 487 F.3d 282, 285-87 (5th Cir.
2007) (Texas robbery is violent felony under residual clause);
<u>United States v. Carmichael</u>, 408 F. App'x 769, 770-71 (4th Cir.
2011) (North Carolina robbery is violent felony under residual
clause); <u>United States v. Welch</u>, 683 F.3d 1304, 1310-12 (11th
Cir. 2012) (Florida robbery is violent felony under residual
clause, even though it could be committed through a "mere
snatching"); <u>United States v. Prince</u>, 772 F.2d 1173, 1176-77 (9th
Cir. 2014) (California attempted robbery is violent felony under
residual clause); <u>see also</u> <u>United States v. Smith</u>, 582 F. App'x
590, 595-98 (6th Cir. 2014) (North Carolina robbery qualifies as
"crime of violence" under Guidelines' residual clause). Some
courts even ruled that robbery qualifies as a violent felony (or
crime of violence) under both the residual clause and the force
clause. <u>See, e.g.</u>, <u>United States v. Lockley</u>, 632 F.3d 1238, 1241-
46 (11th Cir. 2011) (Florida attempted robbery); <u>United States v.</u>

In short, because Mr. Barnett's robbery conviction qualified as a crime of violence under the residual clause before 2015 <u>Johnson</u>, this motion to vacate his Career Offender sentence necessarily "relies on" 2015 <u>Johnson</u>'s rule striking down that clause as unconstitutionally vague. In claiming that his Career Offender sentence is unlawful and should be vacated, therefore, Mr. Barnett must argue that his robbery conviction qualifies under neither the residual clause nor the force clause. The rule of 2015 <u>Johnson</u> goes to the former. His claim that his Career Offender sentence must be vacated therefore "relies on" that rule.

<u>Shuck</u>, 481 F. App'x 600, 602-03 (11th Cir. 2012) (federal bank robbery); <u>United States v. Mitchell</u>, 743 F.3d 1054, 1058-63 (6th Cir. 2014) (Tennessee robbery).

**CONCLUSION**

Bernard Barnett can file a successive § 2255 motion based on Johnson because he seeks relief under a new and previously unavailable substantive rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review. And Mr. Barnett is not a Career Offender in light of Johnson.

His life sentence, imposed under the mandatory Guidelines and based upon a now-invalid Career Offender designation, is therefore unlawful. This Court should grant this motion, vacate the sentence, and resentence Mr. Barnett without considering the Career Offender Guideline.

Respectfully submitted,
FEDERAL DEFENDERS OF NEW YORK, INC.
   APPEALS BUREAU


By:   ___/s/_____
      **DARRELL FIELDS**
      Attorney for Defendant-Petitioner
         **Bernard Barnett**
      52 Duane Street, 10th  Floor
      New York, New York 10007
      Tel. No.: (212) 417-8742

46

### CERTIFICATE OF SERVICE

    I certify that a copy of this Memorandum of Law has been served by CM/ECF on the United States Attorney/S.D.N.Y.; Attention: **JACOB WARREN, ESQ.,** Assistant United States Attorney, One St. Andrew's Plaza, New York, NY 10007

Dated:    New York, New York
          July 7, 2017


                        __/s/_____
                        **DARRELL FIELDS**