UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                           :

BERNARD BARNETT,                      :

                                         :

        Petitioner,             :

                                         :

                                       :     **90-cr-913 (LAP)**

    - v. -                 :     **16-cv-3611 (LAP)**

                                       :

UNITED STATES OF AMERICA,      :

                                       :

        Respondent.         :

                                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW OF THE UNITED STATES
## IN OPPOSITION TO PETITIONER'S MOTION TO VACATE

JOON H. KIM
Acting United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

Jacob Warren
Assistant United States Attorney

0

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................... ii

    Rules and Statutes ................................................................................................. iii

PRELIMINARY STATEMENT ................................................................................. 1

FACTS ........................................................................................................................ 3

    Barnett's Underlying Conviction and Sentence ................................................... 3

    Barnett's Direct Appeal and Subsequent Collateral Attacks ............................... 5

ARGUMENT .............................................................................................................. 6

    A.    Barnett Fails to Satisfy the Requirements of Section 2255 ........................... 6

        1.    Barnett's Motion Is Barred by the Statute of Limitations in Section 2255(f) ............. 6

        2.    Barnett's Motion Cannot Satisfy the Restrictions on Successive Petitions in Section 2255(h)(2) ............. 9

        3.    Barnett Procedurally Defaulted His Vagueness Challenge to His Guidelines Sentence 11

    B.    The Mandatory Guidelines Are Not Subject to Vagueness Challenges under Beckles . 11

    C.    Even if the Mandatory Guidelines Were Subject to Vagueness Challenges, Barnett's Motion Would Be Barred by Teague ................................................................. 14

    D.    Barnett's Prior Robbery Conviction Qualifies as a Predicate Offense under the "Force" Clause of the Career Offender Guideline ................................................. 19

    CONCLUSION ................................................................................................... 26

## TABLE OF AUTHORITIES

*Barnett* v. *Ebbert*, 2013 WL 623108 (M.D. Pa. Feb. 13, 2013)……………………………   5

*Barnett* v. *United States*, 2012 WL 1003594 (S.D.N.Y. Mar. 26, 2012)…………………   5

*Barnett* v. *United States*, 870 F. Supp. 1197 (S.D.N.Y. 1994)…………………………...   4,5

*Barnett* v. *United States*, No. 06-1706 (2d Cir. Oct. 4, 2006)………………………………   6

*Beckles* v. *United States*, 137 S. Ct. 886 (2017) ……………………………………………   passim

*Bell* v. *United States*, 296 F.3d 127 (2d Cir. 2002)…………………………………………   10

*Bennett* v. *United States*, 119 F.3d 468 (7th Cir. 1997)……………………………………   10

*Blount* v. *United States*, 2012 WL 2594109 (E.D. Pa. Jul 5, 2012)…………………………   19

*Blow* v. *United States*, 829 F.3d 170 (2d Cir. 2016) ………………………………………   10

*Bousley* v. *United States*, 523 U.S. 614 (1998) ……………………………………………   2, 11, 15

*Chaidez* v. *United States*, 133 S. Ct. 1103 (2013) …………………………………………   9, 15

*Dodd* v. *United States*, 545 U.S. 353 (2005) ………………………………………………   1, 7, 9

*Duncan* v. *United States*, 552 F.3d 442 (6th Cir. 2009) ……………………………………   19

*Engle* v. *Isaac*, 456 U.S. 107 (1982) ………………………………………………………   2, 11

*Gallagher* v. *United States*, 711 F.3d 315 (2d Cir. 2013) …………………………………   9

*Gideon* v. *Wainwright*, 372 U.S. 335 (1963) ………………………………………………   14

*Gilbert* v. *United States*, 640 F.3d 1293 (11th Cir. 2011) …………………………………   2, 11

*Griffith* v. *Kentucky*, 479 U.S. 314 (1987) …………………………………………………   14

*Guzman* v. *United States*, 404 F.3d 139 (2d Cir. 2005) ……………………………………   3

*Harrington* v. *United States*, 689 F.3d 124 (2d Cir. 2012) …………………………………   2, 11

*Herrera-Gomez* v. *United States*, 755 F.3d 142 (2d Cir. 2014) ……………………………   1, 9

*In re Griffin*, 823 F.3d 1350 (11th Cir. 2016) ………………………………………………...   2, 13

*In re Hubbard*, 825 F.3d 225 (4th Cir. 2016) ………………………………………………   10

*In re Williams*, 330 F.3d 277 (4th Cir. 2003) ………………………………………………   10

*Johnson* v. *United States*, 135 S. Ct. 2551 (2015) …………………………………………   passim

*Johnson* v. *United States*, 559 U.S. 133 (2010) ……………………………………………   21-23

*Koon* v. *United States*, 518 U.S. 81 (1996) …………………………………………………   12, 19

*Lambrix* v. *Singletary*, 520 U.S. 518 (1997) ………………………………………………   17

*Loving* v. *Virginia*, 388 U.S. 1 (1967) ……………………………………………………...   16

*Mackey* v. *United States*, 401 U.S. 667 (1971) ……………………………………………   14-16

*McCarthan* v. *Director*, 851 F.3d 1076 (11th Cir. Mar. 14, 2017) ………………………   2, 11

*Menteer* v. *United States*, 806 F.3d 1156 (8th Cir. 2015) …………………………………   10

*Mistretta* v. *United States*, 488 U.S. 361 (1989) …………………………………………   passim

*Montgomery* v. *Louisiana*, 136 S. Ct. 718 (2016) …………………………………………   16

*People* v. *Bennett*, 631 N.Y.S.2d 834 (1st Dep't 1995) ……………………………………   23

*People* v. *Cherry*, 374 N.Y.S.2d 312 (1st Dep't 1975) ……………………………………   22

*People* v. *Flynn*, 475 N.Y.S.2d 334 (Sup. Ct. 1984) ………………………………………   22

*People* v. *Jurgins*, 2015 N.Y. Slip. Op. 09311, 2015 WL 9091962 (N.Y. Dec. 17, 2015)…   22, 23

*People* v. *Lee*, 602 N.Y.S.2d 138 (1st Dep't 1993) …………………………………………   23

*People* v. *Safon*, 560 N.Y.S.2d 552 (4th Dep't 1990) ……………………………………...   23

*Pepper* v. *United States*, 562 U.S. 476 (2011) ……………………………………………...   19

*Reyes-Requena* v. *United States*, 243 F.3d 893 (5th Cir. 2001) ……………………………   10

*Schriro* v. *Summerlin*, 542 U.S. 348 (2004) ………………………………………… 16, 17

*Spencer* v. *United States*, 773 F.3d 1132 (11th Cir. 2014) ………………………… 19

*Stinson* v. *United States*, 508 U.S. 36 (1993) ………………………………………… 24

*Sun Bear* v. *United States*, 644 F.3d 700 (8th Cir. 2011) ………………………… 19

*Teague* v. *Lane*, 489 U.S. 288 (1989) ………………………………………………… passim

*Tyler* v. *Cain*, 533 U.S. 656 (2001) ………………………………………………….. 9

*United States* v. *Barnett*, 2001 WL 883119 (S.D.N.Y. August 3, 2001)…………………… 5

*United States* v. *Barnett,* 2010 WL 3001974 (S.D.N.Y. July 19, 2010)…………………… 4, 5

*United States* v. *Bennett*, 604 F. App'x 11 (2d Cir. 2015) ………………………… 24

*United States* v. *Bogle*, 522 F. App'x 15 (2d Cir. 2013) ………………………… 24

*United States* v. *Booker*, 543 U.S. 220 (2005) ……………………………………….. 3, 19

*United States* v. *Brown*, 52 F.3d 415 (2d Cir. 1995) ……………………………… 21, 24

*United States* v. *Foote*, 784 F.3d 931 (4th Cir. 2015) ………………………… 11

*United States* v. *Galicia-Delgado*, 130 F.3d 518 (2d Cir. 1997) …………………………… 21

*United States* v. *Jones*, 758 F.3d 579 (4th Cir. 2014) ………………………… 11

*United States* v. *Kornegay*, 641 Fed. App'x. 79 (2d Cir. 2016) ………………………… 24

*United States* v. *Mathur*, (4th Cir. 2012) ……………………………… 8

*United States* v. *Miles*, 748 F.3d 485 (2d Cir. 2014) ………………………… 24

*United States* v. *Roberts*, 9 F.3d 1537 (2d Cir. 1993) ………………………… 5

*United States* v. *Rodriquez*, 553 U.S. 377 (2008) ………………………… 12

*United States* v. *Spencer*, 955 F.2d 814 (2d Cir. 1992) ………………………… 20, 21

*United States* v. *Thomas*, 627 F.3d 534 (4th Cir. 2010) ………………………… 7

*United States* v. *Villa-Gonzales*, 208 F.3d 1160 (9th Cir. 2000) ………………………… 10

*United States* v. *Walker*, 595 F.3d 441 (2d Cir. 2010) ………………………… 24

*United States* v. *Westcott*, 159 F.3d 107 (2d Cir. 1998) ………………………… 21

*United States* v. *Wiggan*, 530 F. App'x 51 (2d Cir. 2013) ………………………… 24

*United States* v. *Williams*, 526 F. App'x 29 (2d Cir. 2013) ………………………… 24

*Welch* v. *United States*, 136 S. Ct. 1257 (2016) ………………………………………… 14-18

*Whorton* v. *Bockting*, 549 U.S. 406 (2007) …………………………………........... 14, 17

*Williams v. United States*, 503 U.S. 193 (1992) ………………………………………… 19

## Rules and Statutes

18 U.S.C. § 16………………………………………………………………………… 21

18 U.S.C. § 3742(g)(2) …………………………………………………………… 19

18 U.S.C. § 922(g) ………………………………………………………………… 3

18 U.S.C. § 924(a) ………………………………………………………………… 18

18 U.S.C. § 924(c) ………………………………………………………………… 3

18 U.S.C. § 924(e) ………………………………………………………………… 6, 18, 21

21 U.S.C. § 841(b)(1) ……………………………………………………...… 3

21 U.S.C. § 846……………………………………………………………………… 3

21 U.S.C. § 856(a)(1) …………………………………………………………… 3

28 U.S.C. § 2255……………………………………………………………………… passim

28 U.S.C. § 2255(f)(3) …………………………………………………………… 1

28 U.S.C. § 2255(h)(2) …………………………………………………………… 1

D.C. Code § 22-280………………………………………………………...… 22

iii

New York Penal Law § 160.00……………………………………………………...…   20-22
New York Penal Law § 70.02……………………………………………………….…   23
18 U.S.C. § 3553(a) ………………………………………………………………..…   13
U.S.S.G. § 4B1.1………………………………………………………………………   passim
U.S.S.G. § 4B1.2………………………………………………………………………   passim
U.S.S.G. § 5K2.0………………………………………………………………...…..   19

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to Bernard Barnett's ("Barnett") motion ("Motion") to vacate his sentence pursuant to Title 28, United States Code, Section 2255.  Barnett contends that his conviction for New York first-degree robbery in 1974 does not qualify as a predicate "crime of violence" under United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 4B1.1, the Career Offender provision, and, therefore, the sentence imposed on him by a court in this district in 1992 under the then-mandatory Guidelines violates the Due Process Clause.  (Motion 1-2).  His argument relies on two propositions: first, that *Johnson* v. *United States*, 135 S. Ct. 2551 (2015) necessarily renders the "residual" clause of Section 4B1.2 unconstitutionally vague (Motion 15); and second, that New York first-degree robbery does not "categorically" qualify as a predicate offense under that statute's "force" clause, (Motion 31).  Barnett's claims, however, are procedurally barred and contradicted by well-established precedent.

First, the Supreme Court has not extended *Johnson* to the mandatory Guidelines, and under Section 2255(f)(3), the Supreme Court itself must recognize the right that a defendant is asserting. *Dodd* v. *United States*, 545 U.S. 353, 357 (2005).  Thus, because Barnett cannot satisfy the only provision for extending the one-year statute of limitations that could apply, his Motion is untimely.

Second, Barnett's petition is successive, requiring him to satisfy the restrictions in Section 2255(h)(2), and that provision is satisfied only when the Supreme Court holds that the rule is available on collateral review.  *Herrera-Gomez* v. *United States*, 755 F.3d 142, 145 (2d Cir. 2014) (per curiam).  Barnett cannot meet that standard.  The Supreme Court has neither extended *Johnson* to the mandatory Guidelines nor made such an extension retroactive.

Third, because Barnett did not raise a vagueness challenge at sentencing or on direct appeal, he procedurally defaulted a vagueness challenge to the mandatory Guidelines. *Bousley* v. *United States*, 523 U.S. 614, 621-22 (1998); *Harrington* v. *United States*, 689 F.3d 124, 129 (2d Cir. 2012). A procedural default may be excused when the petitioner "shows (1) good cause to excuse the default and ensuing prejudice, or (2) actual innocence." *Harrington*, 689 F.3d at 129 (citing *Bousley*, 523 U.S. at 622). Barnett cannot establish actual innocence in challenging a mandatory Guidelines sentence. *See Gilbert* v. *United States*, 640 F.3d 1293, 1306-07 (11th Cir. 2011) (en banc) (rejecting that the top of a mandatory Guidelines range "is the maximum statutory sentence"), *overruled on other grounds by McCarthan* v. *Director*, 851 F.3d 1076 (11th Cir. Mar. 14, 2017) (en banc). Nor can he establish cause for his default. "[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Bousley*, 523 U.S. at 623 (quoting *Engle* v. *Isaac*, 456 U.S. 107, 130 n.35 (1982)).

Fourth, mandatory Guidelines are not subject to vagueness challenge. *See, e.g.*, *In re Griffin*, 823 F.3d 1350, 1354-55 (11th Cir. 2016). In evaluating the Guidelines when they were mandatory, the Supreme Court explained that even then, they "do not bind or regulate the primary conduct of the public or vest in the Judicial Branch the legislative responsibility for establishing minimum and maximum penalties for every crime." *Mistretta* v. *United States*, 488 U.S. 361, 396 (1989). Significantly, the Supreme Court reiterated these same points in *Beckles* in analyzing advisory Guidelines, while citing *Mistretta*, 137 S. Ct. at 894-95.

Fifth, even if this case were not a successive Section 2255, and did not require the Supreme Court to declare the extension that Barnett seeks of *Johnson* to the mandatory Guidelines, this Court should conclude that any such extension of *Johnson* would not be retroactive under *Teague* v. *Lane*, 489 U.S. 288 (1989). On Barnett's view, shifting from the advisory Guidelines, which

2

are not subject to a vagueness challenge, to the mandatory Guidelines, suffices for him to establish a constitutional violation and get around *Teague*.  But in previously addressing a successful constitutional challenge to mandatory Guidelines under *United States* v. *Booker*, 543 U.S. 220 (2005), the Second Circuit and all other circuits have held that such challenges are barred under *Teague*. *See, e.g., Guzman* v. *United States*, 404 F.3d 139, 141 (2d Cir. 2005).  Even the mandatory Guidelines and their system of departures operate within a statutory range, and as a result, *Teague* bars relief on collateral review for any new extension of *Johnson* to the mandatory Guidelines.

Sixth, no vagueness challenge would succeed here because Barnett's prior conviction at issue—first-degree robbery—does not depend on the residual clause, given that it also qualifies as a predicate for the Career Offender Guideline under the force clause.  For each of these reasons, discussed in greater detail below, the Government respectfully submits that Barnett's Motion should be denied.

## FACTS

**Barnett's Underlying Conviction and Sentence**

On December 6, 1991 a jury found Barnett guilty of one count of conspiracy to distribute narcotics, in violation of Title 21, United States Code, Section 846 (Count One); one count of possession to distribute crack cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A) (Count Two); one count of possession with intent to distribute heroin, in violation of Title 21, United States Code, Section 841(b)(1)(C) (Count Three); one count of use of a firearm in relation to drug trafficking, in violation of Title 18, United States Code, Section 924(c) (Count Four); one count of possession of a firearm after a felony conviction, in violation of Title 18, United States Code, Section 922(g) (Count Five); and one count of maintaining a place to manufacture and distribute narcotics, in violation of Title 21, United

3

States Code, Section 856(a)(1) (Count Six).  *See Barnett* v. *United States*, 870 F. Supp. 1197, 1200 (S.D.N.Y. 1994); (*see* PSR at 1).[1]

Barnett was sentenced on August 13, 1992 by Judge Edelstein.  *See United States* v. *Barnett,* 2010 WL 3001974 at * 1 (S.D.N.Y. July 19, 2010).  In the Presentence Report, the Probation Office determined that Barnett qualified as a Career Offender under U.S.S.G. Section 4B1.1 because the offense of conviction was a drug trafficking offense and Barnett had two convictions which qualified as predicate offenses.  (PSR ¶ 146).[2]  Barnett's "first [predicate offense] involved the attempted robbery of a supermarket at gunpoint." *Id.* at ¶ 146. Barnett was convicted of Counts One and Two, following a three-day jury trial, of Indictment 5549/72 on January 28, 1974 (the "1974 Robbery Conviction").[3]  Barnett's second predicate offense was a 1984 conviction for "conspiracy to purchase 2 kilograms of heroin."  (*Id.* ¶ 144, 146).  The Probation Office calculated Barnett's offense level was 37 and criminal history

---

[1]     "PSR" and "Presentence Report" refer to the Presentence Investigation Report prepared by the United States Probation Office in connection with Barnett's sentencing.

[2]     At the time of Barnett's sentencing, a defendant qualified as a Career Offender if "the defendant was at least eighteen years old at the time of the instant offense; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.  U.S.S.G. § 4B1.1 (1989).

[3]     The Indictment, Criminal Complaint, and other related case documents are attached as Exhibit A.  Count One of Indictment 5549/72 states that "on or about December 9, 1972, [the defendants] attempted to steal by force certain property from one Patrick O'Sullivan, to wit, lawful money and in the course of the commission of the crime and of the immediate flight therefrom, they were armed with a deadly weapon, to wit, a loaded pistol and a sawed off shotgun."   The Government has also obtained the trial transcript, attached as Exhibit B, which also makes clear that Barnett displayed and used a firearm during the course of the Robbery. "The People intend in the course of this case to prove the following:  . . . We intend to prove that this defendant, Mr. Barnett, was armed with a loaded revolver at this time which he displayed in the course of the attempted robbery. . . We intend to prove that he displayed the revolver at this time and compelled the manager to leave the cubicle and walk to the safe.  We intend to prove that by these actions the defendant compelled the manager to open this safe."  Ex. B at 000761.

4

category as category VI.  (PSR ¶ 146).  This resulted in a Guidelines range of 360 months to life.  (*Id.* ¶ 150).  At sentencing, Judge Edelstein adopted the finding of facts in the Presentence Report as his own.  *See United States* v. *Barnett*, 2010 WL 3001974 at at *1 (S.D.N.Y. Jul. 19, 2010) ("Judge Edelstein relied on the Probation Office's pre-sentence investigation to determine that Defendant was a career offender.").  Judge Edelstein sentenced Barnett to life imprisonment on Count One and Three, and imposed prison terms on the remaining counts from five to thirty years, all terms to run concurrently.  *See United States* v. *Barnett*, 2001 WL 883119 at *1 (S.D.N.Y. August 3, 2001).

**Barnett's Direct Appeal and Subsequent Collateral Attacks**

The Second Circuit rejected Barnett's appeal in a summary order in October 1993.  *See United States* v. *Roberts*, 9 F.3d 1537 (2d Cir. 1993).  In 1994, Barnett filed for relief under Title 28, United States Code, Section 2255.  *See Barnett* v. *United States*, 870 F. Supp. 1197 (S.D.N.Y. 1994).  In that motion, Barnett contested this Court's finding that he was a Career Offender, alleging that a drug-conspiracy conviction could not trigger the Career Offender provision of the Guidelines.  *Id.* at 1209.  Barnett did not contest whether New York first-degree qualified as predicate offense under that same provision, nor did he argue that the residual clause of Section 41B.2 was unconstitutionally vague.

Barnett has since accumulated "an extensive history of filings with this Court and other federal courts."  *Barnett* v. *United States*, 2012 WL 1003594 at *1 (S.D.N.Y. Mar. 26, 2012).  "Barnett filed nineteen successive motions for resentencing pursuant to 28 U.S.C. § 2255 that the Second Circuit summarily denied by mandate."  *Barnett* v. *Ebbert*, 2013 WL 623108 at *1 (M.D. Pa. Feb. 13, 2013).  In October 2006, the Second Circuit enjoined Barnett from "filing any further

motions, petitions, or other papers in this Court, unless leave of the Court has first been obtained

to file such papers." *Barnett* v. *United States*, No. 06-1706 (2d Cir. Oct. 4, 2006).[4]

Barnett filed a petition for leave to file a successive Section 2255 motion with the Second

Circuit in September 2016, which the court granted on October 26, 2016. *Barnett* v. *United States*,

2d Cir. Dkt. No. 16-3147, ECF No. 20 (Order of Oct. 26, 2016). He subsequently filed this Motion

to vacate his sentence on July 7, 2017. *Barnett* v. *United States*, No. 16 Civ. 3611 (LAP) Dkt. No.

500.

## ARGUMENT

### A. Barnett Fails to Satisfy the Requirements of Section 2255

#### 1. *Barnett's Motion Is Barred by the Statute of Limitations in Section 2255(f)*

This Court lacks jurisdiction to rule on this Motion because it fails to comport with the

limitations set forth in Title 28, United States Code, Section 2255(f) and, therefore, is untimely.

Barnett contends that his Motion is timely under Section 2255(f)(3). (Motion 2). Section 225(f)(3)

establishes a one-year statute of limitation, running from "the date on which the right asserted was

initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme

Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3)

(2008).

The "right" which Barnett asserts entitles him to relief, and which allegedly makes his

Motion timely, is "the right not to be sentenced under the unconstitutionally vague 'residual clause'

---

[4]     In a previous filing with the Court, Barnett raised several non-*Johnson* claims. *See* Dkt.
No. 491. Those non-*Johnson* claims lack any merit, have been raised multiple times previously,
and should be summarily denied. *See, e.g., Barnett v. United States*, 11-cv-301, Dkt. No. 2 at 3,
22 (S.D.N.Y. Jan. 10, 2011) (prior state crime committed before 1984 argument); *Id.* at 10
(general jury verdict argument); *Barnett v. United State*s, 870 F.Supp. 1197, 1209 (S.D.N.Y Dec.
12, 1994) (prior drug conspiracy conviction argument).

of the mandatory Career Offender Guideline. . . . [a] right 'initially recognized' on June 26, 2015 by the Supreme Court in *Johnson*." (Motion 2-3). *Johnson* recognizes no such right. Rather, in *Johnson* v. *United States*, the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague under the Due Process Clause, 135 S. Ct. 2551, 2557 (2015). The sentencing enhancement which Barnett contests is the Career Offender provision of the then-mandatory Guidelines, not ACCA. In an attempt to overcome this threshold requirement, Barnett argues that "*Beckles* clearly implies *Johnson* applies to the identical residual clause in the mandatory pre-*Booker* Career Offender Guidelines." (Motion 20). But to satisfy Section 2255(f)(3), the Supreme Court itself must extend *Johnson* to make mandatory Guideline provisions subject to vagueness challenges and declare the residual clause of the mandatory Guidelines to be unconstitutionally vague. Because the Supreme Court has not recognized the right on which Barnett relies, his Motion is untimely. This threshold legal issue bars relief.

Section 2255(f)(3) provides that when the Supreme Court "decides a case recognizing a new right, a federal prisoner seeking to assert *that right* will have one year from [the Supreme Court's] decision within which to file his § 2255 motion." *Dodd*, 545 U.S. at 358–59 (emphasis added). Critically, Section 2255(f)(3) requires that the Supreme Court *itself* recognize the specific substantive right at issue. A defendant "has one year from the date on which the right he asserts was initially recognized by th[e Supreme] Court." *Id.* at 357. Although "§ 2255(f)(3) does not require that the initial *retroactivity* question be decided in the affirmative *only* by the Supreme Court," *United States* v. *Thomas*, 627 F.3d 534, 536 (4th Cir. 2010) (emphasis added), by necessary implication—and as the plain language of Section 2255(f)(3) requires—the Supreme Court itself must establish the particular *substantive right* at issue. This is significant. Because

Section 2255(f)(3) twice refers to rights that the "Supreme Court" has recognized, the references to the "Supreme Court" in Section 2255(f)(3) necessarily must refer to a requirement that the Supreme Court be the court to recognize the particular substantive right being asserted.

Section 2255(f)(3) divides rights finely, requires each to be itself recognized by the Supreme Court, and then requires each to be retroactive. "Section 2255(f)(3) does not authorize [a lower court] to read between the lines of a prior opinion [by the Supreme Court] to discern whether that opinion, by implication, made a new rule retroactively applicable on collateral review." *United States* v. *Mathur*, 685 F.3d 396, 401 (4th Cir. 2012). The standards in Section 2255(f)(3) create an orderly, rational process. Courts reopen the statute of limitations for specific rights that the Supreme Court itself has newly recognized and do so for one year, but the Supreme Court must be the one to recognize the specific right at issue.

This system provides both a restriction and a significant benefit for defendants. Section 2255(f)(3) is a restriction because defendants whose convictions have been long final must wait for the Supreme Court to issue a new, specific rule relevant to their case to seek relief. As such, Section 2255(f)(3) prohibits defendants from jumping the gun. But Section 2255(f)(3) also benefits defendants because it enables them to utilize new law, assuming it is established by the Supreme Court and made retroactive, to challenge their conviction on collateral review. This procedure also confers significant benefits on the legal system: district courts need not parse new Supreme Court opinions for other possible applications; district courts simply apply controlling holdings and wait to see if new extensions are later made. And by requiring controlling Supreme Court precedent, Congress sought to ensure nationwide uniformity in the treatment of long-final convictions.

To determine whether the Supreme Court has issued a "new" constitutional ruling satisfying Section 2255(f)(3), courts should use the new rule framework of *Teague* v. *Lane*, 489 U.S. 288, 301 (1989).   *See, e.g.*, *Dodd*, 545 U.S. at 359 (tying together Section 2255(f)(3) and *Teague* retroactivity).   Under the *Teague* framework, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final," and "a holding is not so dictated . . . unless it would have been apparent to all reasonable jurists." *Chaidez* v. *United States*, 133 S. Ct. 1103, 1107 (2013) (internal quotations omitted).   As *Teague* noted, "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government."   489 U.S. at 301.   Invalidating the residual clause of the mandatory Guidelines would break new ground and impose new obligations on the government. Thus, because the Supreme Court itself simply has not decided that the mandatory Guidelines are subject to vagueness challenge and that the residual clause in the mandatory Guidelines is unconstitutionally vague, Barnett is not asserting a right which  satisfies § 2255(f)(3).   As such, Barnett's Motion is untimely and so it must fail.

### 2. *Barnett's Motion Cannot Satisfy the Restrictions on Successive Petitions in Section 2255(h)(2)*

Barnett's petition is successive and hence must satisfy the restrictions in Section 2255(h)(2).   Section 2255(h)(2) requires a defendant to rely on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."   28 U.S.C. § 2255(h)(2) (2008).   The Second Circuit has expressly held that "a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive."   *Herrera-Gomez* v. *United States*, 755 F.3d 142, 145 (2d Cir. 2014) (per curiam) (quoting *Tyler* v. *Cain*, 533 U.S. 656, 663 (2001)); *see also Gallagher* v. *United States*, 711 F.3d 315, 315-16 (2d Cir. 2013) (per curiam).   Because the Supreme Court has neither

extended *Johnson* to the Guidelines nor made such an extension retroactive, Barnett cannot satisfy Section 2255(h)(2).

Although the Second Circuit authorized the defendant to file a successive petition, that authorization is not determinative now. This Court must determine *de novo* whether Barnett's petition satisfies Section 2255(h)(2). *See, e.g.*, *Blow* v. *United States*, 829 F.3d 170, 172 (2d Cir. 2016) (per curiam) (explaining that the "prima facie showing" required to obtain authorization for filing a successive petition "is not a particularly high standard" and that "[a]n application need only show sufficient likelihood of satisfying the strict standards of Section 2255 to 'warrant a fuller exploration by the district court'") (quoting *Bell* v. *United States*, 296 F.3d 127, 128 (2d Cir. 2002) (per curiam)); *see also Bennett* v. *United States*, 119 F.3d 468, 470 (7th Cir. 1997) (explaining that an authorization to file a successive petition is "tentative" and that "the district court must dismiss the motion that we have allowed the applicant to file, without reaching the merits of the motion, if the court finds that the movant has not satisfied the requirements for the filing of such a motion").[5]

In authorizing Barnett to file a successive petition, the Second Circuit merely took "a cursory glance at the merits" of whether a defendant was entitled to relief, satisfying Section 2255(h). *In re Hubbard*, 825 F.3d 225, 231 (4th Cir. 2016) (quoting *In re Williams*,

---

[5]       Other courts of appeals follow the same approach in requiring district courts to serve as independent gatekeepers of the Section 2255(h) standard for successive petitions. For example, the Eight Circuit "emphasize[d]," in a case granting authorization to file a successive petition in light of *Johnson*, that "the district court must not defer to this court's preliminary determination in granting authorization." *Menteer* v. *United States*, 806 F.3d 1156, 1156 (8th Cir. 2015) (internal quotations omitted); *see also, e.g.*, *Reyes-Requena* v. *United States*, 243 F.3d 893, 899 (5th Cir. 2001) ("[T]he . . . panel's grant of permission to [defendant] to file a second § 2255 motion did not preclude the [district court] from conducting its own threshold inquiry; in fact, the [district court] was *obligated* to do so." (emphasis added)); *United States* v. *Villa-Gonzales*, 208 F.3d 1160, 1165 (9th Cir. 2000) (per curiam) ("We conclude, therefore, that under section 2244(b)(4), a district court must conduct a thorough review of all allegations and evidence presented by the prisoner to determine whether the motion meets the statutory requirements for the filing of a second or successive motion.").

330 F.3d 277, 282 (4th Cir. 2003)).  The ultimate determination whether a Section 2255 motion meets the Section 2255(h)(2) requirement "is for the district court to determine," including an evaluation of the government's defenses.  *Id*.

### 3. *Barnett Procedurally Defaulted His Vagueness Challenge to His Guidelines Sentence*

Because Barnett did not raise a vagueness challenge at sentencing or on direct appeal, he procedurally defaulted a vagueness challenge to the mandatory Guidelines.  *Bousley* v. *United States*, 523 U.S. 614, 621-22 (1998); *Harrington* v. *United States*, 689 F.3d 124, 129 (2d Cir. 2012).  A procedural default may be excused only when "the petitioner shows (1) good cause to excuse the default and ensuing prejudice, or (2) actual innocence."  *Harrington*, 689 F.3d at 129. Barnett cannot establish actual innocence in challenging a mandatory Guidelines sentence.  *See United States* v. *Foote*, 784 F.3d 931, 941 (4th Cir. 2015); *United States* v. *Jones*, 758 F.3d 579, 583-84 (4th Cir. 2014); *Gilbert* v. *United States*, 640 F.3d 1293, 1306-07 (11th Cir. 2011) (en banc) (rejecting that the top of a mandatory Guidelines range "is the maximum statutory sentence"), *overruled on other grounds by McCarthan* v. *Director*, 851 F.3d 1076 (11th Cir. Mar. 14, 2017) (en banc)).  Nor can Barnett establish cause for his default.  "[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'"  *Bousley*, 523 U.S. at 623 (quoting *Engle* v. *Isaac*, 456 U.S. 107, 130 n.35 (1982)). Accordingly, this Court should reject Barnett's Motion without reaching the merits.

### B. The Mandatory Guidelines Are Not Subject to Vagueness Challenges under Beckles

Barnett contends that, in light of the Supreme Court's decision in *Beckles* v. *United States*, 137 S. Ct. 886 (2017), *Johnson*'s holding necessarily renders the residual clause of Section 4B1.2 unconstitutionally vague.  (Motion 12).  He maintains that because the Court in *Beckles* held that the vagueness doctrine did not apply to the residual clause in the advisory

Guidelines "for the sole reason that [the Guidelines] were advisory," the "clear implication" of *Beckles* is that "*Johnson* must apply to the mandatory Guidelines." (*Id.* at 12).

Such a broad interpretation of *Beckles* is unwarranted. In *Beckles*, the Supreme Court held that "the advisory Sentencing Guidelines, including § 4B1.2(a)'s residual clause, are not subject to a challenge under the void-for-vagueness doctrine." 137 S. Ct. at 896. Because the advisory Guidelines "do not fix the permissible range of sentences" but "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range," *id.* at 892, the Court reasoned that the Guidelines "do not implicate the twin concerns underlying vagueness doctrine—providing notice and preventing arbitrary enforcement," *id.* at 894. This reasoning applies with equal force to the mandatory Guidelines.

In evaluating the Guidelines when they were mandatory, the Supreme Court explained that even then, they "do not bind or regulate the primary conduct of the public or vest in the Judicial Branch the legislative responsibility for establishing minimum and maximum penalties for every crime." *Mistretta* v. *United States*, 488 U.S. 361, 398 (1989). Significantly, the Supreme Court reiterated these same points in *Beckles* in analyzing the advisory Guidelines, while citing *Mistretta*, 137 S. Ct. at 894-95. Even under the mandatory Guidelines, the top of a Guidelines range was never the legal equivalent of a legislatively set statutory maximum. *United States* v. *Rodriquez*, 553 U.S. 377, 390 (2008). Similarly, a "district court's decision to depart from the Guidelines . . . will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." *Koon* v. *United States*, 518 U.S. 81, 98 (1996); *Mistretta*, 488 U.S. at 367 (although the Sentencing Reform Act of 1984 makes the Guidelines binding on sentencing courts, "it preserves for the judge the discretion to depart from the Guideline applicable to a particular case").

Furthermore, like the advisory Guidelines, the mandatory Guidelines "do not implicate the twin concerns underlying vagueness doctrine—providing notice and preventing arbitrary enforcement." *Beckles*, 137 S. Ct. at 894.   First, as to notice, "even if a person behaves so as to avoid an enhanced sentence under the career-offender Guideline, the sentencing court retains discretion to impose the enhanced sentence." *Id*.  As the Eleventh Circuit has explained, "whether the Guidelines are mandatory or advisory, the district court, even without the invalidated residual clause, could still impose a sentence within the same statutory penalty range and indeed the same sentence as before. In fact, in former mandatory Guidelines cases, the resentencing would now be under an even more discretionary advisory system that would permit the district court to impose the same sentence." *In re Griffin*, 823 F.3d 1350, 1355 (11th Cir. 2016).

Similarly, the second concern of vagueness doctrine, arbitrary enforcement, does not differ whether mandatory or advisory Guidelines are considered, for the "Guidelines . . . do not regulate the public by prohibiting any conduct or by 'establishing minimum and maximum penalties for [any] crime.'"  *Beckles*, 137 S. Ct. at 895 (quoting *Mistretta*, 488 U.S. at 396).  In both mandatory and advisory Guidelines cases, the Guidelines provide guidance to judges, not the public, just as the factors in Section 3553(a) do.

The Supreme Court summed up its ruling in *Beckles* in terms that apply equally to advisory and mandatory Guidelines: "it is far from obvious that the residual clause implicates the twin concerns of vagueness any more than the statutory command that sentencing courts impose a sentence tailored, for example, 'to promote respect for the law.' 18 U.S.C. § 3553(a)(2)(A). And neither the Guidelines nor the other § 3553(a) factors implicate those concerns more than the absence of any guidance at all, which the Government concedes is constitutional."  *Id*. at 896.

As such, Barnett's claim that *Beckles* sharply distinguishes between advisory and mandatory Guidelines, exposing the latter to vagueness challenges, is belied by *Beckles*'s reasoning.

### C. Even if the Mandatory Guidelines Were Subject to Vagueness Challenges, Barnett's Motion Would Be Barred by Teague

Any extension of *Johnson* to mandatory Guidelines would not be retroactive under *Teague* v. *Lane*, 489 U.S. 288 (1989).  When the Supreme Court announces a new procedural rule, that rule "applie[s] retroactively to all cases, state or federal, pending on direct review or not yet final." *Griffith* v. *Kentucky*, 479 U.S. 314, 328 (1987).   But prisoners generally cannot invoke new procedural rules to obtain collateral relief from final convictions.  Drawing on an approach earlier articulated by Justice Harlan, the plurality opinion in *Teague* concluded that "new constitutional rules of criminal procedure" generally "will not be applicable to those cases which have become final before the new rules are announced."  489 U.S. at 310; *see Mackey* v. *United States*, 401 U.S. 667, 675-702 (1971) (Harlan, J., concurring in the judgments in part and dissenting in part).  The full Supreme Court has since adopted that approach.  *See Welch* v. *United States*, 136 S. Ct. 1257, 1264 (2016).

As the Supreme Court explained in *Welch*, two categories of new legal rules are not subject to *Teague*'s retroactivity bar.  136 S. Ct. at 1264.  "First, '[n]ew substantive rules generally apply retroactively.'" *Id.* (emphasis and citation omitted; brackets in original).  The *Teague* bar is concerned with rules of procedure, not the substantive reach of criminal statutes.  "Second, new watershed rules of criminal procedure, which are procedural rules implicating the fundamental fairness and accuracy of the criminal proceeding, will also have retroactive effect."  *Id.* (citation and internal quotation marks omitted).  The only example of a watershed rule that the Supreme Court has recognized is the right-to-counsel rule of *Gideon* v. *Wainwright*, 372 U.S. 335 (1963). *See Whorton* v. *Bockting*, 549 U.S. 406, 418-419 (2007).

The *Teague* framework recognizes that "[a]pplication of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system."  489 U.S. at 309 (plurality opinion).  Collateral review has never been a "substitute for direct review."  *Id.* at 306 (internal quotation marks omitted).  Rather, collateral review's principal purposes are to deter state and federal courts from violating then-governing procedural law, *id.*, and to provide a remedy when a defendant is imprisoned for conduct that is not criminal, *Bousley* v. *United States*, 523 U.S. 614, 620-621 (1998), or is subject to a sentencing range greater than what the law authorizes, *Welch*, 136 S. Ct. at 1265.  Where those purposes are not implicated, the overriding "interests of comity and finality" generally preclude relief. *Teague*, 489 U.S. at 308 (plurality opinion).  As Justice Harlan explained, "[a] rule of law that fails to take account of . . . finality interests would do more than subvert the criminal process itself "; "[i]t would also seriously distort the very limited resources that society has allocated to the criminal process."  *Mackey*, 401 U.S. at 691 (concurring in the judgments in part and dissenting in part).

The rule that Barnett seeks to establish—that the mandatory Guidelines are subject to vagueness challenge and the residual clause is vague—is a "new" constitutional rule because the invalidity of the Guidelines' residual clause was not "*dictated* by precedent existing at the time [his] conviction became final."  *Chaidez*, 568 U.S. 342, 347 (2013) (citation omitted) (emphasis in original).  Importantly for the retroactivity analysis, that rule is "new" not only because *Johnson* v. *United States*, 135 S. Ct. 2551, was decided in 2015, but also because to obtain relief Barnett must establish an additional novel proposition: that the vagueness doctrine applies to mandatory Guidelines—even though the Supreme Court has now held that the vagueness doctrine does *not* apply to advisory Guidelines.  Barnett's asserted rule would therefore be "new" even if his

15

conviction had become final after *Johnson*.  Barnett is thus foreclosed from obtaining relief unless his asserted rule falls within one of the two categories exempt from the *Teague* bar. Barnett cannot contend that his asserted rule would be a "watershed" rule of criminal procedure.  *Welch*, 136 S. Ct. at 1264 (observing that the *Johnson* rule not watershed).  Accordingly, Barnett's rule would apply retroactively only if it qualifies as "substantive" under *Teague*.  It does not.

The Supreme Court "has determined whether a new rule is substantive or procedural by considering the function of the rule"—that is, the actual effect of the rule when applied in criminal cases.  *Welch*, 136 S. Ct. at 1265.  "A rule is substantive rather than procedural," the Court explained in *Welch*, "if it alters the range of conduct or the class of persons that the law punishes." *Id.* at 1264-1265 (quoting *Schriro* v. *Summerlin*, 542 U.S. 348, 353 (2004)).  Thus, substantive rules include constitutional rules forbidding criminal punishment for certain primary conduct, *e.g.*, *Loving* v. *Virginia*, 388 U.S. 1 (1967); constitutional rules prohibiting the imposition of certain forms of punishment, such as the death penalty or mandatory life imprisonment without parole, on particular classes of offenders, *e.g.*, *Montgomery* v. *Louisiana*, 136 S. Ct. 718, 734 (2016); statutory-interpretation decisions holding that a criminal offense does not reach certain primary conduct, *Bousley*, 523 U.S. at 620; and decisions voiding for vagueness a statutory provision defining a criminal offense or punishment, *Welch*, 136 S. Ct. at 1265.

Such rules apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal'" or faces a more severe range of punishment than the law authorizes.  *Summerlin*, 542 U.S. at 352 (quoting *Bousley*, 523 U.S. at 620).  In those circumstances, the finality interests underlying *Teague* must give way because "[t]here is little societal interest in permitting the criminal process to rest at a point where

it ought properly never to repose." *Montgomery*, 136 S. Ct. at 732 (quoting *Mackey*, 401 U.S. at 693 (Harlan, J., concurring in the judgments in part and dissenting in part)).

In contrast, procedural rules regulate the "manner of determining" either guilt or punishment, but do not shield a defendant from criminal liability or from exposure to a particular sentencing range. *Welch*, 136 S. Ct. at 1265 (emphasis omitted) (quoting *Summerlin*, 542 U.S. at 353). Examples of procedural rules are rules that "'allocate decisionmaking authority' between judge and jury," *id.* (quoting *Summerlin*, 542 U.S. at 353), rules that "regulate the evidence that the court could consider in making its decision," *id.* (citing *Whorton*, 549 U.S. at 413-414, 417), and rules that govern the sort of considerations that a sentencing judge or jury may take into account, *e.g.*, *Lambrix* v. *Singletary*, 520 U.S. 518, 539-540 (1997). Such rules do not alter the authorized range of possible outcomes. Although procedural rules may have a significant effect on the outcome in any given case, a violation of those rules does not mean that any prisoner is serving a sentence that is not legally authorized or change the statutory range. For that reason, the advent of new procedural rules does not warrant upsetting final convictions in light of the overriding societal interest in the finality of criminal judgments.

Accordingly, the retroactivity question in this case depends on the "function" of the rule that Barnett seeks: whether, in practical operation, the rule would "alter[] the range of conduct or the class of persons that the law punishes" or instead regulate only the "manner of determining" an appropriate sentence. *Welch*, 136 S. Ct. at 1264-1265 (citations and emphasis omitted).

Barnett's proposed extension of *Johnson* and limitation of *Beckles* would have a procedural function. A Guidelines range does not impose substantive limits on the range of legally authorized sentences. The rule would not "alte[r] the range of conduct or the class of persons that the law punishes." *Welch*, 136 S. Ct. at 1267 (quoting *Summerlin*, 542 U.S. at 353) (brackets in original).

17

Even if he prevails on his claim, Barnett will still be subject to the same statutory range of punishment, and this Court would be authorized to impose a sentence within that range.

Just as a rule that "regulate[s] the evidence that [a] court could consider in making [a] decision" qualifies as procedural, *Welch*, 136 S. Ct. at 1265, a rule that alters the considerations that a court must take into account in deciding an appropriate sentence is procedural because it governs the *manner* of arriving at a decision, not the substantive bounds of a permissible sentence.

Under ACCA, when a court relied on the residual clause to find that the defendant had the necessary three prior convictions, the defendant's sentence was elevated from a maximum of ten years to a minimum of fifteen years. *Compare* 18 U.S.C. § 924(a)(2), *with* 18 U.S.C. § 924(e)(1). The constitutional rule announced in *Johnson* renders the 15-year mandatory minimum sentence illegal, and that change is substantive: it alters the permissible ranges of sentences. *See, e.g.*, *Welch*, 136 S. Ct. at 1265 ("By striking down the residual clause as void for vagueness, *Johnson* changed the substantive reach of [ACCA], altering 'the range of conduct or the class of person that the [Act] punishes.'"). Misapplications of the Guidelines, in contrast, do not have the same consequences. A rule invalidating Section 4B1.2's residual clause would establish that the defendant's Guidelines range was incorrectly calculated, but it would not disturb the statutory boundaries for sentencing set by Congress for the crime. The Guidelines do not trigger a statutory mandatory minimum sentence that would not otherwise apply and do not elevate the statutory maximum, as is true under ACCA. *See Mistretta* v. *United States*, 488 U.S. 361, 396 (1989) (Guidelines do not usurp "the legislative responsibility for establishing minimum and maximum penalties for every crime," but instead operate "within the broad limits established by Congress").

Indeed, Guidelines sentences must always be within the limits set by Congress; as a result, a Guidelines sentence imposed under an incorrect Guidelines range may be erroneous, but it is not

illegal or unlawful as in a case involving prejudicial *Johnson* error under ACCA.  *See Sun Bear* v.

*United States*, 644 F.3d 700, 705 (8th Cir. 2011) (en banc) (explaining that "Sun Bear's 360-month

[Guidelines] sentence," imposed on the basis of an error in classifying him as a Career Offender,

under the then-mandatory Guidelines "is not unlawful" because "[a]n unlawful or illegal sentence

is one imposed without, or in excess of, statutory authority").[6]  In short, Barnett's challenge to his

mandatory Guidelines sentence similarly depends on a new procedural rule and is thus barred

under *Teague*.

### D.  Barnett's Prior Robbery Conviction Qualifies as a Predicate Offense under the "Force" Clause of the Career Offender Guideline

---

[6]      This conclusion is not altered by the fact that the Guidelines were mandatory at the time of Barnett's sentencing. Before *United States v. Booker*, 543 U.S. 220 (2005), sentencing courts had the authority to "depart" from the Guidelines range in appropriate cases.  *See* U.S.S.G. § 5K2.0; *see also Koon v. United States*, 518 U.S. 81, 92 (1996); *Williams v. United States*, 503 U.S. 193, 205 (1992) ("The selection of the appropriate sentence from within the Guideline range, as well as the decision to depart from the range in certain circumstances, are decisions that are left solely to the sentencing court."). Even under the mandatory Guidelines, the Court still had the discretion – albeit more closely reviewed – to depart from the Guidelines range so long as it remained within the lawful range of sentencing outcomes.   After *Booker*, of course, sentencing courts have broader authority to "vary" from the now-advisory Guidelines range, *see Booker*, 543 U.S. at 245-246, including, in particular, the Guideline range after the Career Offender enhancement is applied. See, *e.g.*, *Spencer v. United States*, 773 F.3d 1132, 1142 (11th Cir. 2014) (en banc) (stating that "sentencing courts depart or vary from the Guideline range more often when they sentence career offenders").  Whether the Guidelines are mandatory or not, the presence of judicial authority to impose lesser sentences than called for by the Guidelines illustrates that an erroneous career-offender designation is a procedural step in a multi-step process that results in a court's selection of a sentence, not a substantive rule that expands or contracts the statutory range of outcomes.  Accordingly, *Johnson*'s application to the Guidelines constitutes a procedural rule, not a substantive decision entitled to retroactive application in Guidelines cases on collateral review.  This conclusion is supported by *Booker* itself, which expanded sentencers' discretion by excising portions of the Sentencing Reform Act that made the Guidelines mandatory.  *Booker*, 543 U.S. at 245-268.  So did *Pepper v. United States*, 562 U.S. 476 (2011), by excising 18 U.S.C. § 3742(g)(2).  562 U.S. at 493-498.  Yet courts have held that neither decision is retroactively applicable on collateral review.  *See*, *e.g.*, *Duncan v. United States*, 552 F.3d 442, 445-447 (6th Cir. 2009) (*Booker*'s remedial holding); *Blount v. United States*, 2012 WL 2594109, at *3, 4 & n.9-10 (E.D. Pa. Jul 5, 2012) (unpub.) (*Pepper*).

Even if the Supreme Court had voided the residual clause of Section 4B1.2 and made its ruling apply retroactively, Barnett's Motion would still fail, because his Career Offender designation is properly supported under Section 4B1.2's force clause.  The Second Circuit has held that, under the statute's plain language, the New York crime of attempted robbery is a "crime of violence" as defined in the "force" clause of U.S.S.G. Section 4B1.2.  *United States* v. *Spencer*, 955 F.2d 814, 820 (2d Cir. 1992).  The "force" clause of the career offender Guideline defines a "crime of violence" to include any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 4B1.2(a)(1) (2016).  The Guidelines commentary also includes a specific list of qualifying crimes of violence, which includes robbery. U.S.S.G. § 4B1.2 app. n.1.  The "force" clause was not invalidated by the Supreme Court's holding in *Johnson*, and *Spencer* remains good law, as do numerous precedents of this Court that are in accord.  Accordingly, the Motion also fails on its merits because Barnett's prior New York conviction for robbery in the first degree qualifies as a Career Offender predicate offense even if the residual clause was void for vagueness.

Before committing the instant offense, Barnett was convicted of attempted robbery in the first degree, in violation of New York Penal Law Section 160.15. (PSR ¶ 141).  That statute provides that a person is guilty of robbery in the first degree when he "forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . [u]ses or threatens the immediate use of a dangerous instrument."  N.Y. Penal Law § 160.15.  This crime is one of three degrees of robbery under New York law, each of which prohibit "forcibly steal[ing] property."  N.Y. Penal Law §§ 160.05, 160.10, 160.15.  For each of these three offenses, the term "forcible stealing" is defined identically:

> A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:
>
> (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
>
> (2) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

N.Y. Penal Law § 160.00.

Based on the plain language of the statute, robbery of any degree under New York law is a "crime of violence." The New York definition of robbery tracks the Guidelines definition of crime of violence nearly word for word. *Compare* N.Y. Penal Law § 160.00 ("uses or threatens the immediate use of physical force upon another person"), with U.S.S.G. § 4B1.2(a)(1) ("use, attempted use, or threatened use of physical force against the person of another").

For this reason, the Second Circuit has repeatedly held that the various degrees of robbery in New York constitute crimes of violence (or violent felonies) under U.S.S.G. Section 4B1.2 and other provisions with similarly worded force clauses, such as Title 18, United States Code, Section 16, and Title 18, United States Code, Section 924(e) ("ACCA"). *See United States* v. *Westcott*, 159 F.3d 107, 114-15 (2d Cir. 1998) (first degree robbery is a crime of violence under 18 U.S.C. § 16); *United States* v. *Galicia-Delgado*, 130 F.3d 518, 520 (2d Cir. 1997) (first degree robbery "plainly has the attempted-use-of force element needed to come within the scope of 18 U.S.C. § 16"); *United States* v. *Brown*, 52 F.3d 415, 425-26 (2d Cir. 1995) (third degree robbery is a violent felony under ACCA); *United States* v. *Spencer*, 955 F.2d 814, 820 (2d Cir. 1992) (attempted third degree robbery is a crime of violence under U.S.S.G. § 4B1.2).

Barnett argues that these precedents have been implicitly overruled by the Supreme Court's decision in *Johnson* v. *United States*, 559 U.S. 133 (2010) (*Curtis Johnson*). *Curtis Johnson* did

21

no such thing.  In *Curtis Johnson*, the Supreme Court addressed what type of physical contact was sufficient to qualify as "physical force" under ACCA.  *Id.* at 135.  The statute before the Court was Florida's simple battery statute, which is generally a misdemeanor and requires only "actually and intentionally touching" another person.  *Id.*  The Court held that felonies that "involve a mere unwanted touching" do not qualify as violent felonies because they do have the requisite degree of force.  *Id.* at 142.  That is, when interpreted in the context of defining the term violent felony, "the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person."  *Id.* at 140.

Unlike the simple battery statute at issue in *Curtis Johnson*, robbery under New York law is not a crime that can be accomplished by mere unwanted touching.  *See, e.g.*, *People* v. *Cherry*, 374 N.Y.S.2d 312, 313 (1st Dep't 1975) (trial court improperly advised the jury that "mere 'touching' of the victim was the equivalent of physical force").  Rather, robbery is specifically defined to require physical force applied for the purpose of "[p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking" or "[c]ompelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."  N.Y. Penal Law § 160.00.  Mere unwanted touching would hardly achieve the requisite purpose.  But force sufficient to prevent or overcome resistance is exactly the type of violent force that is capable of causing physical pain or injury.  Indeed, the "common sense" meaning of "physical force" as used in the New York robbery statute is "power or strength or violence exerted against a body."  *People* v. *Flynn*, 475 N.Y.S.2d 334, 337 (Sup. Ct. 1984).

The New York Court of Appeals has made clear that the crime of robbery in New York cannot be accomplished by mere unwanted touching.  *See People* v. *Jurgins*, 2015 N.Y. Slip. Op.

09311, 2015 WL 9091962 (N.Y. Dec. 17, 2015).  In that case, the court was considering whether a defendant's prior robbery conviction in the District of Columbia qualified as a predicate felony conviction under New York law.  The D.C. statute at issue prohibited taking by "force or violence," which included "by sudden or stealthy seizure or snatching."  *Id*. at *3 (quoting D.C. Code § 22-2801).  The court concluded that the defendant's conviction for this crime was not a predicate felony, because "a taking 'by sudden or stealthy seizure or snatching' would not be considered a robbery or other felony in New York."  *Id*.  By contrast, Barnett's prior conviction for robbery in the first degree would be not just a predicate felony but a predicate violent felony under New York Penal Law Section 70.02(1)(b).

Barnett's examples of reported New York robbery cases do not undermine the conclusion that a New York robbery involves violent force. Barnett's first example, in which the defendant and others formed a human wall to block the victim's path, simply stands for the proposition that, under New York law, physical force need not actually be used, as long as it is threatened or attempted.  *People* v. *Bennett*, 631 N.Y.S.2d 834, 834 (1st Dep't 1995).  The rest of Barnett's cases describe uses of violent force that are, in fact, capable of "causing physical pain or injury."  *See People* v. *Lee*, 602 N.Y.S.2d 138, 139 (1st Dep't 1993) (defendant "bumped" the victim while a codefendant forcibly blocked the victim's pursuit); *People* v. *Safon*, 560 N.Y.S.2d 552, 552 (4th Dep't 1990) (victim grabbed defendant's hand and "the two tugged at each other until defendant's hand slipped out of the glove holding the money").  Each of these cases involve force that is "capable of causing physical pain or injury," and none resembles the "mere unwanted touching" that was at issue in *Curtis Johnson* and would not suffice for a robbery conviction under New York law.  *See Jurgins*, 2015 WL 9091962, at *3.

No Second Circuit decision supports the claim that *Curtis Johnson* abrogated this Court's earlier holdings that various degrees of robbery in New York constitute crimes of violence under U.S.S.G. Section 4B1.2.  To the contrary, the Second Circuit reaffirmed its holding from *United States* v. *Brown* that New York third degree robbery is a "violent felony" under ACCA.  *See United States* v. *Miles*, 748 F.3d 485, 490 (2d Cir. 2014).  Moreover, the Court has repeatedly issued summary orders reaffirming the plain-text conclusion that a New York robbery constitutes a crime of violence or violent felony.  *See, e.g.*, *United States* v. *Kornegay*, 641 Fed. App'x. 79 (2d Cir. 2016) (second degree robbery under Career Offender Guideline); *United States* v. *Bennett*, 604 F. App'x 11, 15-16 (2d Cir. 2015) (first degree robbery under ACCA); *United States* v. *Williams*, 526 F. App'x 29, 37 (2d Cir. 2013) (second degree attempted robbery under ACCA); *United States* v. *Bogle*, 522 F. App'x 15, 19 (2d Cir. 2013) (second degree attempted robbery under ACCA); *see also United States* v. *Wiggan*, 530 F. App'x 51, 57 (2d Cir. 2013) (Connecticut robbery statute with similarly worded force clause is a violent felony under ACCA).

Even if the plain text were not sufficient, the Guidelines commentary makes clear that robbery is a "crime of violence" by including it as a specifically enumerated example.  *See* U.S.S.G. § 4B1.2, app. n.1. "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."  *Stinson* v. *United States*, 508 U.S. 36, 38 (1993).  For the foregoing reasons, the Guidelines commentary is entirely consistent with the plain text of the career offender Guideline and in no event is the inclusion of robbery as a crime of violence "a plainly erroneous reading" of that Guideline. *See, e.g., United States* v. *Kornegay*, 641 Fed. App'x. 79, 85 (2d Cir. 2016) ("Moreover, robbery is specifically listed as a crime of violence in the applicable Guidelines commentary.").   New York law corresponds to the generic

24

understanding of robbery and, accordingly, the inclusion of robbery in the enumerated lists of crimes of violence settles the issue.   *See United States* v. *Walker*, 595 F.3d 441, 445-47 (2d Cir. 2010).

Finally, the particular facts of the 1974 Robbery Conviction committed by Barnett and his co-defendant, brought to light after a three-day trial culminating with his conviction, make crystal clear that the 1974 Robbery Conviction was absolutely a crime of violence.   *See* Ex. A and Ex. B. Barnett and his co-defendant attempted a brazen robbery of a grocery store in the Bronx armed with a pistol and a sawed off shotgun, using both weapons during the course of the crime.  Indeed, if the 1974 Robbery Conviction is not a crime of violence, it is hard to imagine a set of facts that would qualify a crime as one of violence.[7]

Under binding Second Circuit precedent, the New York crime of robbery is a crime of violence. Accordingly, even if the holding of *Johnson* were applied retroactively to invalidate the residual clause of the Career Offender Guideline on collateral review, Barnett's Motion still fails on the merits because his prior conviction for robbery still qualifies him as a Career Offender under the force clause.

---

[7]     The Government believes the Court need not even reach the issue of *Shepard* documents in dismissing Barnett's Motion because it is procedurally and substantively defective for the reasons stated herein.  But the documents obtained by the Government from the Bronx Supreme Court, some of which are *Shepard* documents, do conclusively show that the 1974 Robbery Conviction is a crime of violence, and further demonstrate that Barnett's claim lacks any merit.

## **CONCLUSION**

The Court should dismiss Barnett's successive petition under 28 U.S.C. § 2255 because he

is not entitled to any relief.

Dated: August 11, 2017
       New York, New York

                    Respectfully submitted,

                    JOON H. KIM
                    Acting United States Attorney for the
                    Southern District of New York

By:    /s/ Jacob Warren_____
                    Jacob Warren
                    Assistant United States Attorney
                    (212) 637-2264
                    jacob.warren@usdoj.gov