```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>-against-<br><br>BERNARD BARNETT,<br><br>                Defendant. | No. 90-CR-913 (LAP)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Defendant Bernard Barnett's motion, pursuant to 18 U.S.C. § 3582(c)(1)(A), for compassionate release because of the COVID-19 pandemic.  (See dkt. no. 575.)  The Government opposed the motion, (see dkt. no. 580), and Defendant replied, (see dkt. no. 581).  Defendant is a 67-year-old, fully vaccinated inmate serving a life sentence.  For the reasons set out below, the motion is DENIED.

**I.  Background**

    Defendant was a member of a drug-trafficking organization, which distributed heroin, cocaine, and crack cocaine in the Bronx, Brooklyn, and Manhattan from approximately 1988 until 1990.[1]  Defendant acted as a supplier to the organization, and he also distributed substantial quantities of crack and cocaine to other customers.  On one occasion in 1990, Barnett--while armed

---

[1] The following facts are drawn from the parties' submissions and are undisputed unless otherwise stated.  The parties' papers draw heavily on Defendant's Presentence Investigation Report.

1

with an Uzi--searched for a co-defendant in order to collect on an outstanding heroin debt. The evidence against Defendant consisted largely of his own statements recorded by wiretaps or undercover law enforcement[2] as well as items seized from his home.[3] Over the course of the investigation, Defendant maintained that he was a jewelry dealer and that he did not live at the residence searched by law enforcement.

On November 13, 1991, Defendant and a co-conspirator were charged in a seven-Count indictment. The Government also filed a prior felony information regarding one of Defendant's previous offenses, thereby triggering increased penalties for Counts One, Three, and Four. At trial, Defendant presented three witnesses, two of whom perjured themselves. Ultimately, the jury convicted Defendant of six counts: (1) conspiracy to distribute narcotics, in violation of 21 U.S.C. §§ 841(b)(1)(A) & 846 (Count One); (2) possession with intent to distribute crack cocaine, in violation

---

[2] For example, Defendant admitted to an undercover officer that he operated as a street manager to a narcotics supplier, delivering up to one and one-half kilograms of heroin at a time. Wiretaps also recorded Defendant (1) speaking with co-conspirators about an undercover agent's request to buy heroin and (2) bragging to his co-defendant about making significant sums of money selling heroin in Baltimore.

[3] A search warrant executed on Defendant's residence recovered, inter alia, (1) quantities of both heroin and crack cocaine; (2) various drug paraphernalia used for preparing, testing, and packaging drugs for sale; (3) financial records and other documents, including false IDs as well as false employment and tax documents; (4) other documents connecting Defendant to various co-conspirators and undercover law enforcement; and (5) a 12-gauge shotgun along with several boxes of ammunition.

of 21 U.S.C. § 841(b)(1)(A) (Count Three); (3) possession with intent to distribute heroin, in violation of 21 U.S.C § 841(b)(1)(C) (Count Four); (4) possession of a firearm in relation to a drug-trafficking crime, in violation of 18 U.S.C § 924(c) (Count Five); (5) possession of a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1) (Count Six); and (6) maintaining a place to manufacture and distribute narcotics, in violation of 21 U.S.C. § 856(a)(1) (Count Seven).

Under the then-operative Guidelines, the drug quantity yielded a base offense level of 34.  Defendant also received a two-point enhancement for obstruction of justice for inducing two witnesses to commit perjury.  Defendant was deemed a career offender within the meaning of U.S.S.G. § 4B1.1 because he (1) was over eighteen at the time he committed his offenses and (2) had two prior qualifying convictions.  Under the career-offender Guidelines, Defendant's base offense level was 37 and his Criminal History Category was VI, which translated to a Guidelines range of 360 months to life.  Judge David N. Edelstein sentenced Defendant to life imprisonment on Counts One and Three, with concurrent terms of thirty years' imprisonment on Count Four, 10 years' imprisonment on Count Six, twenty years' imprisonment on Count Seven, and a mandatory five-year consecutive term of imprisonment on Count Five.  Defendant's § 924(c) conviction and sentence were later vacated pursuant to Bailey v. United States, 516 U.S. 137 (1995).

In December 2020, Defendant filed a request for compassionate release with the Warden of USP Beaumont, the facility where he is incarcerated.  The Warden denied the request on January 22, 2021.  This application for compassionate release followed.

## II.  Applicable Law

Defendant moves for a reduction of his term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (2018).[4]  Under that provision, the Court may reduce Defendant's sentence if it finds that (1) "extraordinary and compelling reasons warrant such a reduction" and (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The relevant Guidelines policy statement--Section 1B1.13--counsels that a reduction also is not proper unless "[t]he defendant is not a danger to the safety of any other person or to the community."[5]

With respect to the "extraordinary and compelling reasons" requirement, the application notes to U.S.S.G § 1B1.13 provide

---

[4] A defendant may bring such motion after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

[5] U.S.S.G. § 1B1.13; see also United States v. Jordan, No. 1:19-CR-478-GHW, 2020 WL 4195353, at *2 (S.D.N.Y. July 16, 2020) ("The relevant policy statement is U.S.S.G. § 1B1.13.").

4

three instances where such reasons may exist: (1) the Defendant has a terminal illness or serious medical condition that substantially diminishes his ability care for himself; (2) the Defendant is at least 65 years old, has served 10 years or 75 percent of his sentence, and is experiencing a serious age-related decline in health; or (3) the Defendant's family circumstances have changed such that the Defendant is the only available caregiver for a minor child or incapacitated spouse.[6]

Under the First Step Act, the Court may exercise its "discretion in determining what are extraordinary circumstances." United States v. Brooker, 976 F.3d 228, 234 (2d Cir. 2020). But a court's finding such circumstances merely permits a defendant's release--it does not mandate it. See, e.g., United States v. Ebbers, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020); United States v. Israel, No. 05-CR-1039 (CM), 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019). Ultimately, "[t]he defendant has the burden to show he is entitled to a sentence reduction." United States v. Lisi, 440 F. Supp. 3d 246, 249 (S.D.N.Y. 2020).

Moreover, even if the defendant establishes extraordinary or compelling circumstances, the Court must still consider the

---

[6] U.S.S.G. § 1B1.13 app. n.1(A)-(C). The application notes also allow a catchall condition where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the Defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id. at app. n.1(D).

5

§ 3553(a) sentencing factors "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Those factors include, inter alia, "(1) the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; and (3) "the need for the sentence imposed ... to protect the public from further crimes of the defendant." Id. § 3553(a)(1)-(2).

### III.  Discussion

Although Defendant has properly exhausted his administrative remedies,[7] the Court will not order his release.

First, Defendant has not demonstrated "extraordinary and compelling reasons" warranting release. Defendant claims that he is at a high risk of serious illness from COVID-19, due to his age (67) and several medical conditions, including Type 2 diabetes, glaucoma, cataracts, hypertension, an enlarged prostate, and a prolonged, dry cough. (See dkt. no. 575 at 4.) The Government does not contest that Defendant suffers from these conditions. Defendant admits, however, that he has received both doses of the Pfizer COVID-19 vaccine. (See id. at 5.) According to the CDC, "[c]urrently authorized vaccines in the United States

---

[7] Defendant petitioned the Warden of USP Beaumont for compassionate release in December 2020, which the Warden denied on January 22, 2021. (See dkt. no. 575-1.)

are highly effective at protecting vaccinated people against symptomatic and severe COVID-19," and "[i]nfections in fully vaccinated people . . . happen in only a small proportion of people who are fully vaccinated, even with the Delta variant."[8] Accordingly, the Court finds that Defendant is no longer at high risk for severe illness caused by COVID-19, and this Court joins others which have held that such a defendant cannot establish extraordinary and compelling reasons for his release on that ground.[9]  That the vaccine does not eliminate <u>all</u> risk of infection--as Defendant's reply seems to imply is the test, (<u>see</u> dkt. no. 581 at 2-3)--does not change the Court's conclusion.

---

[8] <u>Interim Public Health Recommendations for Fully Vaccinated People</u>, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (last updated July 28, 2021).

[9] <u>See</u>, <u>e.g.</u>, <u>United States v. Perelda</u>, No. S1 17 Cr. 559 (VB), 2021 WL 2533475, at *2 (S.D.N.Y. June 21, 2021) ("Moreover, the FDA-approved vaccines are effective against the variants currently spreading in the United States.  Perelda's full vaccination means his health conditions that might otherwise weigh in favor of reducing his sentence do not constitute extraordinary and compelling reasons warranting an early release."  (citation omitted)); <u>United States v. Kosic</u>, 18 Cr. 30 (PAC), 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021) (finding no extraordinary or compelling reasons for defendant who had received one dose of Moderna vaccine, with a second scheduled, because "[t]hat vaccine is highly effective against COVID-19, and remains significantly effective against COVID-19 variants"); <u>United States v. Johnson</u>, No. 94 Cr. 631 (PGG), 2021 WL 640054, at *5 (S.D.N.Y. Feb. 18, 2021) ("Acknowledging that Defendant's obesity constitutes a risk factor for contracting the COVID-19 virus, and for a poorer prognosis if infected, Hobby Johnson has not demonstrated that 'extraordinary and compelling reasons' justify his release. . . .  The Defendant's vaccination mitigates the risks that he would otherwise face from the COVID-19 virus.").

And second, even if the Court found that Defendant's medical conditions in a fully-vaccinated individual constituted "extraordinary and compelling reasons" warranting release, the Court still would not exercise its discretion to release him because doing so would contravene the § 3553(a) factors.  As noted above, Defendant was sentenced as a career offender and has a significant history of serious crime, including narcotics and firearms offenses.[10]  In addition, despite receiving a ten-year sentence after being convicted on a narcotics-conspiracy charge involving an attempted purchase of two kilograms of heroin, Defendant committed the instant offenses while on parole.  He obviously did not learn respect for the law from that prior ten-year sentence.  Moreover, although Defendant's obstruction-of-justice enhancement did not affect his Guidelines range, it does not change the fact that he induced perjured testimony from two witnesses.  Accordingly, the Court declines to release Defendant because his criminal history indicates that he remains a danger to his community.

## IV.   Conclusion

For the reasons set out above, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) [dkt.

---

[10] Defendant's statement that he "remains incarcerated based on non-violent drug charges" might technically be correct. (Dkt. no. 581 at 5.)  But his possession of firearms and ammunition as well his searching with an Uzi for a heroin debtor, at the least, show a propensity for violence.

no. 575] is DENIED.  The Clerk of the Court shall mail a copy of this order to Mr. Barnett.

**SO ORDERED.**

Dated:     August 10, 2021
           New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge