UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

BERNARD BARNETT,

Defendant.

90 Cr. 913 (LAP)

OPINION AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Bernard Barnett's renewed motion, on remand from the Court of Appeals, for a sentence reduction under the First Step Act ("FSA"). (Dkt. no. 587.)[1] The Government opposes, (dkt. no. 600), and Defendant's counsel filed several documents regarding Defendant's health and medical records (see dkt. nos. 616, 619). As of May 25, 2023, Defendant's counsel pronounced that "the record regarding Mr. Barnett's First-Step-Act motion is complete." (Dkt. no. 619 at 4.) For the reasons set out below, Defendant's motion is denied.

---

[1] After the Court of Appeals issued its mandate, (see dkt. no. 579), remanding the issue of Defendant's original FSA Motion, (see dkt. no. 525), Defendant submitted a pro se letter to this Court, (see dkt. no. 587), which the Court construed as his renewed motion under the FSA, (see dkt. no. 589).  The Government and counsel for Defendant subsequently agreed on a briefing schedule for the renewed FSA Motion. (See dkt. nos, 593, 596.)

## I.   Background

### a. Offense Conduct

Defendant was a member of a drug trafficking organization involved in the distribution of heroin, cocaine, and crack cocaine at locations in the Bronx, Brooklyn, and Manhattan from approximately 1988 until 1990. (PSR ¶ 71.)[2] He acted as a supplier of narcotics, particularly heroin, to the organization. (Id. ¶¶ 91-93, 113-16.)

Superseding Indictment S5 90 Cr. 913 (DNE) was filed on November 13, 1991, containing seven counts against Defendant and a co-conspirator. (See dkt. no. 194.) After a three-week jury trial against Defendant and one co-defendant, on December 6, 1991, the jury convicted Defendant on six counts: (i) conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846 (Count One); (ii) possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(b)(1)(A) (Count Three); (iii) possession with intent to distribute heroin, in violation of 21 U.S.C § 841(b)(1)(C) (Count Four); (iv) use of a firearm in relation to drug trafficking, in violation of 18 U.S.C § 924(c) (Count Five); (v) possession of a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1) (Count Six); and (vi) maintaining a place to manufacture and distribute

---

[2] "PSR" refers to the 1992 Presentence Report prepared by the U.S. Probation Office.

a controlled substance, in violation of 21 U.S.C. § 856(a)(1)
(Count Seven). See Barnett v. United States, 870 F. Supp. 1197,
1200 (S.D.N.Y. 1994).

Evidence at trial established that Defendant acted as a
supplier of heroin to a drug trafficking organization run by
Justine Roberts and that Defendant also distributed substantial
quantities of crack and cocaine to other customers. (PSR ¶¶ 81,
91-94, 113-116.) Much of the evidence against Defendant was in
the form of his own statements, recorded by undercover agents or
wiretaps, as well as evidence seized from his home the day prior
to his arrest. Specifically, Defendant admitted to an undercover
officer that he acted as a street manager to a narcotics
supplier; in that role, Defendant delivered up to one-and-one-
half kilograms of heroin at a time to customers, including to
certain co-defendants. (Id. ¶ 115.) Wiretaps also recorded
Defendant speaking with co-conspirators regarding an undercover
agent's request for eight ounces of heroin. (Id. ¶ 113.) On one
occasion in 1990, Defendant—armed with an Uzi—went looking for a
co-defendant to collect on a heroin debt that the co-defendant
owed but had not yet paid. (Id. ¶ 93.) Defendant also bragged to
co-defendant Roberts that he also sold heroin in Baltimore,
where he could make $30,000 from the sale of just one ounce.
(Id.)

Law enforcement executed a search warrant in December 1990 on Defendant's residence where they recovered, among other items, 8.9 grams of heroin; 1299 vials of crack weighing a combined 80.1 grams; inositol (a narcotics dilutant); a "hot box" (drug testing kit); numerous sifters and strainers; measuring spoon sets; razor blades; masks; small spoons attached to bottles; more than 1000 small Ziploc plastic bags; 65 small brown bottles; 77 empty vials; fake household items used to hide narcotics (e.g., car batteries, a fire extinguisher); beepers; financial records reflecting monthly expenditures ranging up to $46,325; false identification, employment, and tax forms; false tax returns; books and papers containing the names and addresses of various co-conspirators, the undercover officer, and other known narcotics traffickers; books about narcotics; a 12-gauge shotgun; and numerous boxes of ammunition. (Id. ¶¶ 117, 122.)

During the investigation and prosecution of the case, Defendant told the Government that he was a jewelry dealer and that the wiretap evidence related to a sale of eight ounces of gold—not heroin. (Id. ¶ 125). Defendant also disputed that he lived at the residence where law enforcement officers arrested him and executed the search warrant. (Id.) Defendant presented three witnesses in his defense at trial, two of whom perjured themselves while testifying. (Id.)

Defendant was sentenced on August 13, 1992. Under the U.S.
Sentencing Guidelines ("Guidelines") in effect at that time, the
drug quantity attributable to Defendant yielded a base offense
level of 34. (Id. ¶ 130.)[3] Defendant also received a two-point
enhancement for obstruction of justice for inducing two
witnesses to commit perjury. (Id. ¶ 134.) Moreover, because
Defendant was over 18 years old at the time he committed these
offenses and had two prior qualifying convictions, he was deemed
a career offender within the meaning of U.S.S.G. § 4B1.1. (Id.
¶ 146.) Additionally, on November 15, 1991, the Government had
filed a prior felony information regarding one of Defendant's
previous offenses, thus increasing the penalties associated with
Counts One, Three, and Four. (Id. ¶¶ 67, 149.) Based on the

---

[3] Consistent with the law at the time, the jury was not asked to
make findings as to the drug type or quantity involved in the
multi-object conspiracy charged in Count One. (See Dkt. no. 595-
2, at 17.) The jury thus returned only a general verdict on
Count One but did not specify whether it involved (i) one
kilogram or more of heroin; (ii) 50 grams or more of crack
cocaine; and/or (iii) a detectable amount of cocaine. At
Defendant's sentencing, the Honorable David N. Edelstein made a
factual finding that the drug quantity involved in the offense
triggered the higher statutory penalties set forth in 21 U.S.C.
§ 841(b)(1)(A), concluding that "the evidence adduced at trial
amply supports the conclusion that the [D]efendant personally
negotiated in excess of one kilogram of heroin and 50 grams of
crack. Moreover, it was reasonably foreseeable to this
[D]efendant that the conspiracy of which he was a member
negotiated, produced and distributed quantities of narcotics far
in excess of these amounts." (Transcript of Sentencing before
the Hon. David N. Edelstein, dated August 13, 1992 ("Sent. Tr.")
at 12 [dkt no. 595-5].)

foregoing, the application of the career offender Guidelines yielded a base offense level of 37 and a Criminal History Category of VI. (Id. ¶ 146.) The applicable Guidelines range was therefore 360 months to life imprisonment, with mandatory minimum sentences of 20 years imprisonment on Counts One and Three as a result of the filing of a prior felony information. (Id. ¶ 149-50.)

At sentencing, although Defendant challenged the applicability of the obstruction of justice enhancement, Judge Edelstein deemed the enhancement "not relevant" to Defendant's offense level because Defendant would be sentenced under the career offender Guidelines, pursuant to which Defendant's base offense level was 37 and Criminal History Category was VI. (Sent. Tr. 12-13.) Judge Edelstein sentenced Defendant to life imprisonment on Counts One and Three, with concurrent terms of 30 years imprisonment on Count Four, 10 years imprisonment on Count Six, 20 years imprisonment on Count Seven, and a mandatory 5-year consecutive term of imprisonment on Count Five.[4] (Id. at 15-16.)

---

[4] The Middle District of Pennsylvania vacated Defendant's conviction on Count Five on July 21, 1999 pursuant to Bailey v. United States, 516 U.S. 137 (1995). See Government Letter at 13, Barnett v. United States, No. 11-cv-2736 (S.D.N.Y. Apr. 21, 2011), Dkt. no. 3.

b. Procedural History

On March 25, 2019, pursuant to the FSA, Defendant filed a counseled motion seeking a reduction in his sentence to time served on both Counts One and Three. (Dkt. no. 525.) All parties agreed that Defendant was eligible for a sentence reduction as to Count Three. (See dkt. no. 531, at 1, 4.) In a January 13, 2020 Order, this Court concluded that, while Defendant was eligible for a reduction as to Count Three, a sentence reduction on that count would be "purely academic" because Defendant remained subject to a life sentence on Count One, citing Judge Edelstein's comments at Defendant's sentencing that the trial evidence showed that Defendant "personally negotiated in excess of one kilogram of heroin and 50 grams of crack." (Dkt. no. 537, at 11-12.) The Court therefore granted Defendant's motion on Count Three and denied it on Count One, "resulting in no change to the life sentence currently being served." (Dkt. no. 537, at 12.) As defense counsel has noted, the Court there observed that "a sentence of time served or 30 years' imprisonment would be the appropriate adjustment as to Count Three." (Id. at 11.)

On January 14, 2020, Defendant filed a timely notice of appeal,[5] (see dkt. 538), and on April 20, 2020, the Court of

---

[5] On January 24, 2020, the Court of Appeals ordered Defendant to file a motion for leave to appeal from [footnote continued]

Appeals granted Defendant's motion for leave to appeal.
Defendant filed a counseled brief on appeal, seeking vacatur of
the Court's denial of Defendant's motion for a sentence
reduction pursuant to the FSA and remand for consideration of
the merits of Defendant's motion. On March 10, 2021, the Court
of Appeals granted the Government's motion to vacate the order
denying Defendant's FSA motion and to remand for further
proceedings. (Dkt. 572.)[6]

For the reasons set forth in the procedural history,
Defendant's counseled FSA Motion is now fully briefed.

In 2006, when Defendant moved for the nineteenth time for
an order authorizing this Court to consider a successive § 2255
motion, and after "prior warnings about frivolous litigation had
gone unheeded," the Court of Appeals enjoined Defendant from
filing "any further motions, petitions, or other papers in this
Court, unless leave of the Court has first been obtained to file

_____

[continued] this Court's denial of his FSA motion, see Order,
Barnett v. United States, No. 20-211 (2d Cir. Jan. 24, 2020),
dkt no. 12, because on October 4, 2006, the Court of Appeals had
entered an order requiring Defendant to file a motion seeking
leave prior to filing any future appeals, (see dkt. no. 400).

[6] Separately, on August 10, 2021, the Court denied Defendant's
motion for compassionate release pursuant to 18 U.S.C.
§ 3582(c)(1)(A) based on the COVID-19 pandemic. (Dkt. no. 597.)
Assuming that Defendant had shown "extraordinary and compelling
reasons" warranting release, the Court declined to exercise its
discretion to release him finding that "his criminal history
indicates that he remains a danger to the community." (Id.
at 8.)

such papers." (Dkt. no. 400); see also United States v. Roberts,
No. 06-1702 (2d Cir. Oct. 4, 2006) (hereafter, the "2006
Order"). In April 2011, this Court barred Defendant from filing
any future petitions or motions challenging his December 6, 1991
conviction without leave of the Court. See Order, Barnett v.
United States, No. 11-cv-74 (S.D.N.Y. Apr. 12, 2011), dkt.
no. 7. Although the Court allowed Defendant's counsel from his
Johnson motion to file the initial FSA Motion, (see dkt. no.
520), allowing counsel to file an FSA Motion does not extend to
granting Defendant permission to file multiple pro se filings
addressing substantive issues beyond the FSA in light of the
leave-to-file restrictions on Defendant. Indeed, Defendant
acknowledges that his counsel is aware of Defendant's pro se
issues and has deliberately chosen not to include them in the
counseled FSA brief. (See Dkt. no. 605, at 1, 4 ("[Counsel] will
not touch or brief, or listen to no pro se issues. I am on my
own. They have zero merit, and do not belong on a First Step Act
resentence. . . . Stop submitting them . . . or go pro se
alone."); Dkt. no. 618, at 8 ("My attorney . . . 100% refuse to
acknowledge my legally correct pro se issues[.]"). For these
reasons alone, Defendant's pro se filings, (see dkt. nos. 602,
603, 605, 618, 627), are stricken.

Even if those pro se filings were considered, however, the
Court notes that the pro se issues are either premature or have

been litigated previously. Defendant's allegations regarding double jeopardy, ex post facto violations, and supervised release appear to rest on a faulty assumption of what the Court of Appeals actually held. Defendant assumes that the Court of Appeals held that he must be resentenced on Count One, but the Court of Appeals only remanded for further consideration of whether Defendant could be eligible for FSA relief as to Count One. See United States v. Barnett, No. 20-1296 (2d Cir. Mar. 10, 2021), dkt. no. 85 ("The jury . . . did not make any specific findings of fact with respect to drug quantity; instead, the district court made factual findings at sentencing. On remand, the district court should consider if the pre-Apprendi nature of [Defendant]'s conviction affects whether his offense is covered under the First Step Act. If the district court determines that [Defendant] is eligible for a sentence reduction, it should then determine whether it will grant the reduction.").

In any event, Defendant has repeatedly litigated the same or similar issues multiple times in this Court. For example, with respect to his argument regarding the general jury verdict, in 2011, Defendant filed motions in this Court in which he also argued that the general jury verdict for multiple drug types rendered his conviction jurisdictionally infirm—the identical argument he raises here. See Motion at 7, 19-23, Barnett v. United States, No. 11-cv-2736 (S.D.N.Y. Apr. 21, 2011), dkt.

10

no. 2; Petition for Writ of <u>Cobam Nobis</u> at 1-3, 14-15, <u>Barnett</u> <u>v. United States</u>, No. 11-cv-301 (S.D.N.Y. Jan. 10, 2011), dkt. no. 2. This Court summarily dismissed these motions, and it does so again here. <u>See</u> <u>Barnett v. United States</u>, No. 11-cv-2736, 2012 WL 1003594, at *3 (S.D.N.Y. Mar. 26, 2011). Accordingly, the Court rejects Defendant's <u>pro se</u> arguments on the merits.

## II.  Applicable Law

The FSA was enacted in December 2018. FSA Section 404(b) provides, in relevant part, that a court that imposed a sentence for a "covered offense" may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). FSA Section 404(a) defines "covered offense" as a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." <u>Id.</u>

Thus, FSA Section 404 conditions eligibility for a sentence reduction on whether a sentence was imposed for a "covered offense," that is, "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." <u>Id.</u>; <u>see</u> <u>United States v. Johnson</u>, 961 F.3d 181, 189-90 (2d Cir. 2020) ("[U]nder Section 404(a) of the

11

First Step Act, if the statutory penalties associated with a particular 'Federal criminal statute' were modified by Section 2 or 3 of the Fair Sentencing Act, then any defendant sentenced for violating that 'Federal criminal statute' has been sentenced for a 'covered offense.'"); United States v. Holloway, 956 F.3d 660, 664 (2d Cir. 2020) ("To be eligible . . . [a defendant is] required to demonstrate that he was sentenced for a particular 'violation of a Federal criminal statute,' and that the applicable statutory penalties for that violation were modified by the specified provisions of the Fair Sentencing Act."). As relevant to Defendant's case, prior to the Fair Sentencing Act, under 21 U.S.C. § 841(b)(1)(A)(iii), an offense involving 50 grams or more of crack mandated a minimum term of imprisonment of 10 years, which doubled to 20 years if the defendant had a prior felony drug conviction, and allowed a maximum term of imprisonment of life. Section 2 of the Fair Sentencing Act changed this threshold quantity to 280 grams. See Pub. L. No. 111-220, 124 Stat 2372 (2010). Both before and after the Fair Sentencing Act, 21 U.S.C. § 841(b)(1)(A)(i) provided the same penalties for an offense involving more than one kilogram of heroin.

The First Step Act provides a "limited procedural vehicle." United States v. Moore, 975 F.3d 84, 92 (2d Cir. 2020). The statute does not, by its own terms, "require a plenary

resentencing or operate as a surrogate for collateral review, obliging a court to reconsider all aspects of an original sentence." Id. at 90. Rather, Section 404(b) instructs a district court to determine the impact of Sections 2 and 3 of the Fair Sentencing Act of 2010, which "modified the drug quantity thresholds for defendants who were prosecuted for crack cocaine trafficking under 21 U.S.C. § 841(b)(1)(A)(iii) or (B)(iii)." Id. at 91. If a defendant was sentenced for a "covered offense," the district court may, in its discretion, reduce the defendant's sentence. Id. at 87. That is, eligibility for FSA relief is distinct from whether a district court should grant such relief. See Johnson, 961 F.3d at 191 ("Section 404 relief is discretionary, after all, and a district judge may exercise that discretion to deny relief where appropriate."); Holloway, 956 F.3d at 666 (even where a defendant "is plainly eligible for relief" under the FSA, "he is not necessarily entitled to relief" (emphasis in original)).

**III. Discussion**

The Court of Appeals has held that a multi-object narcotics conspiracy in which a non-crack object independently triggers the same, or higher, mandatory minimum as the crack object is a "covered offense" under the FSA. See United States v. Reed, 7 F.4th 105, 110 (2d Cir. 2021) ("[A] multi-object narcotics conspiracy conviction involving a crack cocaine object, with a

statutory penalty provision under 21 U.S.C. § 841(b)(1)(A)(iii)
. . . is a 'covered offense' under Section 404 that is eligible
for a sentence reduction, even where the other objects of the
conspiracy (involving different controlled substances) triggered
statutory penalties that were not modified[.]"). Accordingly,
Defendant's conviction on Count One, a multi-object narcotics
conspiracy with both crack and non-crack objects, is a "covered
offense" under the FSA.[7] He is thus eligible for a sentence
reduction under the FSA. See Johnson, 961 F.3d at 189-90;
Holloway, 956 F.3d at 664.

Although in connection with Defendant's FSA motion, the
Court observed that "a sentence of time served or 30 years'
imprisonment would be the appropriate adjustment as to Count
Three," (dkt. no. 537 at 11), that is not the end of the
analysis in an FSA motion. The Court should consider the Section
3553(a) factors in deciding whether to exercise its discretion
under Section 404 to reduce Defendant's sentence. See United
States v. Moyhernandez, 5 F.4th 195, 205 (2d Cir. 2021) (Section
3553(a) factors are "sound guiding principles" that "may often
prove useful" in ruling on an FSA motion). Applying these
principles, the Court finds that the Section 3553(a) factors
militate strongly against resentencing Defendant to time served.

---

[7] As set forth above, the parties previously agreed that Count
Three is also a "covered offense" for FSA purposes.

14

The serious nature of the Defendant's convictions, his extensive criminal history, his failure to accept responsibility for his criminal conduct in this case, and his attempt to obstruct justice at his trial through eliciting perjured testimony all counsel strongly against a reduction of his sentence.

The Defendant, who was sentenced as a career offender, has a significant history of violent crime and narcotics offenses. Moreover, Defendant's narcotics and firearms charges were all committed while the Defendant was on parole from another narcotics conviction in this District.[8] During his trial, the Defendant suborned perjury by having two defense witnesses give false testimony. (PSR ¶ 125; Sent. Tr. 8-11.) There is simply no reason to believe that the Defendant, who was arrested for the instant offenses when he was nearly forty years old and on parole after serving a ten-year sentence, no longer presents a risk of recidivism. Indeed, when evaluating the Defendant's recent motion for compassionate release pursuant to 18 U.S.C.

---

[8] In September 1982, Defendant was arrested and charged in this District with conspiracy to distribute narcotics related to his attempt to purchase two kilograms of heroin for $300,000 from an undercover DEA agent. (PSR ¶ 144.) Defendant was convicted and received a sentence of ten years imprisonment. (Id.) After Defendant was paroled in December 1988, he tested positive on two drug tests, fabricated employment records submitted to his probation officer, and was arrested for the instant offenses. (Id. ¶ 145.)

15

§ 3582(c), the Court found that the Defendant's criminal history

indicates that he remains a danger to the community, saying:

> [E]ven if the Court found that Defendant's medical
> conditions in a fully-vaccinated individual constituted
> "extraordinary and compelling reasons" warranting
> release, the Court still would not exercise its
> discretion to release him because doing so would
> contravene the § 3553(a) factors. As noted above,
> Defendant was sentenced as a career offender and has a
> significant history of serious crime, including
> narcotics and firearms offenses. In addition, despite
> receiving a ten-year sentence after being convicted on
> a narcotics-conspiracy charge involving an attempted
> purchase of two kilograms of heroin, Defendant committed
> the instant offenses while on parole. He obviously did
> not learn respect for the law from that prior ten-year
> sentence. Moreover, although Defendant's obstruction-
> of-justice enhancement did not affect his Guidelines
> range, it does not change the fact that he induced
> perjured testimony from two witnesses. Accordingly, the
> Court declines to release Defendant because his criminal
> history indicates that he remains a danger to his
> community."

(Dkt. no. 597, at 8.)

The only thing that has changed between then and now is

that Defendant has suffered a condition requiring surgery as set

forth in counsel's letter dated May 25, 2023. (Dkt. no. 619.)

Although the Court is sympathetic to Defendant's health

condition, BOP seems to be treating it effectively. Of more

relevance are the factors which counseled against release in

2021: Defendant was sentenced at age 40 as a career offender

with a significant history of serious crimes, including

narcotics and firearms offenses. Despite receiving a 10-year

sentence on his prior narcotics-conspiracy conviction, Defendant

16

committed this offense while on parole. Not only that, but he obstructed justice by inducing perjured testimony from two witnesses as his trial. The Court finds that the passage of time has not diminished Defendant's danger to the community.

## IV.  Conclusion

Accordingly, for the reasons set forth above, Defendant's renewed FSA motion, (dkt. no. 587), is denied.

The Clerk of the Court is directed to close docket entries 587 and 631 and to strike docket entries 602, 603, 605, 618, and 627. The Clerk of the Court shall also mail a copy of this order to Defendant.

**SO ORDERED.**

Dated:    New York, New York
          December 7, 2023

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge